662 S.E.2d 24 (2008)
In the Matter of E.X.J. and A.J.J., Minor Children.
No. COA07-1235.
Court of Appeals of North Carolina.
June 17, 2008.
Goldsmith, Goldsmith & Dews, P.A., by James W. Goldsmith, Marion, for petitioner-appellee.
Susan J. Hall, Fayetteville, for respondent-appellant father.
Jon W. Myers, Lexington, for respondent-appellant mother.
North Carolina Guardian ad Litem Program, by Pamela Newell Williams, Raleigh, for guardian ad litem.
GEER, Judge.
Respondent mother and respondent father appeal from the trial court's judgment and order terminating their parental rights to their minor children E.X.J. ("Eddie") and A.J.J. ("Annie").[1] Respondents primarily challenge the trial court's subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to enter the initial adjudication order determining the children to be dependent. Respondents argue that Alabama, not North Carolina, was the children's "home state" at that time, and no other basis for jurisdiction in North Carolina existed. Respondents contend that since the trial court initially lacked jurisdiction, the court that entered the termination of parental rights order also lacked jurisdiction.
This appeal is controlled by In re M.B., 179 N.C.App. 572, 635 S.E.2d 8 (2006). Based on that decision, because the trial court properly exercised its emergency jurisdiction under the UCCJEA in entering the initial adjudication and because the children and respondent mother had been present in this State for two years by the time of the filing of these proceedings to terminate parental rights, M.B. requires that we hold that the trial court had subject matter jurisdiction over these proceedings. Accordingly, we affirm the trial court's order.

Facts
Respondent mother arrived in Rutherford County, North Carolina on 19 April 2005 with Eddie and Annie. The next day, she went to the Rutherford County Department of Social Services ("DSS") and reported that she was not mentally or financially able to care for her children, that she had no friends or family willing or able to care for them, and that she wanted them to be placed in foster care until she was able to care for them herself.
Respondent mother and her children had been living in Lee County, Alabama with respondent father. The minor children were born in Alabama and had lived there all their lives except for a brief period from November 2004 to February 2005 when they were in North Carolina. Respondent mother told DSS that she fled Alabama because respondent father was physically abusive toward her and the children. She stated that he consumed alcohol and used marijuana on a daily basis and would throw things at her and hit her. On one occasion, when he became angry with respondent mother, he threw Eddie against a wall; on another occasion *26 he threw Annie out the back door after a fight with respondent mother.
Respondent mother told the social worker that she had no home, no money, no job, and no transportation. DSS offered her a place to stay at a domestic violence or homeless shelter, but she refused. DSS then obtained nonsecure custody of Eddie and Annie on 20 April 2005, and a written order was entered on 21 April 2005. On 21 April 2005, DSS filed juvenile petitions alleging that Eddie and Annie were dependant and neglected juveniles. A summons for each child was personally served on respondent mother, but the summonses mailed to respondent father in Alabama were returned "unclaimed," and the record does not indicate that he was served through any other means.
After filing the juvenile petitions, DSS contacted the Lee County, Alabama Department of Human Resources ("DHR"). DHR reported that although it had two prior reports involving the children, there was no open case on the family, but DHR would assist DSS in any way possible.
An order entered 28 April 2005 continued nonsecure custody with DSS and set the hearing on the juvenile petitions for 13 May 2005. The adjudication hearing was ultimately continued twice, with the hearing eventually being set for 26 August 2005. On 12 August 2005, notice for the 26 August 2005 adjudication hearing was mailed to respondent father in Alabama. Respondent father sent a letter to the clerk of court dated 21 August 2005 and filed 30 August 2005 stating that he was "not able to make it" to the adjudication but that he currently had a "good job and . . . a place to stay" and would be getting a raise and a place of his own in the near future.
The adjudication hearing was held as scheduled on 26 August 2005. Respondent mother admitted the allegations of dependancy as set forth in the juvenile petitions and stipulated that Eddie and Annie were dependant juveniles. She also stipulated that it was in the best interests of her minor children that DSS retain custody. Based on these stipulations, the court, in an order entered 11 October 2005, adjudicated Eddie and Annie as dependant and determined that it was in their best interests to remain in DSS custody.
After a review hearing was held on 24 February 2006, the court entered an order on 21 March 2006 again concluding that it was in the children's best interests to remain in the foster homes provided by DSS. Permanency planning hearings were conducted on 10 April 2006 and again on 25 September 2006. In an order entered 6 October 2006, the court ceased reunification efforts and changed the permanent plan to adoption for both children.
On 6 and 14 December 2006, DSS filed motions in the cause to terminate respondents' parental rights as to Eddie and Annie. On 23 April 2007, at the direction of the court, apparently based on DSS' failure to serve respondent father with a summons and the petition in the initial adjudication proceeding, DSS filed an amended motion to terminate respondent mother's parental rights and a separate petition to terminate respondent father's parental rights. Respondent mother was properly served with the amended motion, while summonses were issued and served in connection with the petition on respondent father and the guardian ad litem for the children.
The trial court conducted the termination of parental rights hearing on 24 July 2007. At the close of DSS' evidence, respondents moved to dismiss the motion and petition on the ground that the court lacked subject matter jurisdiction. The court denied the motion, as well as respondent father's motion to dismiss for lack of personal jurisdiction based on the fact that he had not been served in the initial adjudication proceeding.
In its 31 July 2007 judgment and order, the trial court determined that grounds existed to terminate respondent mother's parental rights as to both children under N.C. Gen. Stat. § 7B-1111(a)(2) and (3) (2007). The court found grounds for terminating respondent father's parental rights under N.C. Gen. Stat. § 7B-1111(a)(5). The court then determined that it was in the children's best interests to terminate respondents' parental rights and ordered DSS to proceed with plans for adoption. Respondents timely appealed *27 from the court's 31 July 2007 judgment and order.

Discussion
Respondents first argue that DSS lacked standing to pursue termination of their parental rights because DSS had not been granted custody of the children by a court of competent jurisdiction. Under N.C. Gen.Stat. § 7B-1103(a)(3) (2007), a petition or motion to terminate the parental rights of a parent may be filed by a "county department of social services . . . to whom custody of the juvenile has been given by a court of competent jurisdiction." If DSS does not lawfully have custody of the children, then it lacks standing to file a petition or motion to terminate parental rights, and the trial court, as a result, lacks subject matter jurisdiction. In re Miller, 162 N.C.App. 355, 358, 590 S.E.2d 864, 866 (2004).
We note that the 28 April 2005 nonsecure custody order  a form document  stated that "North Carolina is the home state of the named juvenile(s)." It is, however, undisputed that at the time of the filing of the juvenile petition in this action, North Carolina was not the children's "home state," as defined by the UCCJEA, N.C. Gen.Stat. § 50A-201(a)(1) (2007). Nevertheless, a trial court is entitled to assert "temporary emergency jurisdiction if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." N.C. Gen.Stat. § 50A-204(a) (2007).
Although the initial 21 April 2005 nonsecure custody order did not assert a basis for jurisdiction, and the 28 April 2005 order continuing custody contained boilerplate language regarding "home state" jurisdiction, the trial court, in its 11 October 2005 initial adjudication, found with respect to jurisdiction:
The mother moved to North Carolina from Alabama with her two children. She alleges that her move was to flee an abusive relationship with the father of the children. Upon arrival in Rutherford County, NC the mother contacted Rutherford County DSS to advise that she had no means to care for the children. Rutherford County DSS has worked closely with the mother to procure employment, housing, medical treatment for the children and mental health treatment for the mother. The mother was recently hospitalized following a suicide attempt. She is no longer employed and lacks housing, and thus the present ability to care for her children.
Similarly, in the termination of parental rights order on appeal, the court found in pertinent part, with respect to jurisdiction:
On April 19, 2005, the respondent mother, together with the children's maternal grandmother, came to Rutherford County Department of Social Services with the children and requested the agency to take custody of the minor children. The respondent mother told the social worker that she had been in an abusive relationship with the respondent father, and did not have an ability to take care of the children, or have any friends or family who were willing or able to take care of the children. The respondent mother told the social worker she could not mentally or financially care for the children. The Rutherford County DSS offered to assist the respondent mother in obtaining shelter at the domestic violence shelter or homeless shelter, but the respondent mother refused the services. DSS filed a juvenile petition, and was granted non-secure custody of the children on April 20, 2005.
These findings are not challenged on appeal and, therefore, are binding on this Court. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
These findings establish a basis for emergency jurisdiction. It is immaterial to the question of the trial court's subject matter jurisdiction in granting nonsecure custody to DSS that the trial court did not make the necessary findings. With respect to the bases for jurisdiction set forth in N.C. Gen.Stat. § 50A-201 and N.C. Gen.Stat. § 50A-203 (2007), our appellate courts have specifically held that the "statutes do not require a finding of fact (although this would be the better practice). . . ." In re T.J.D.W., J.J.W., 182 N.C.App. 394, 397, 642 S.E.2d 471, 473, disc. *28 review denied in part, 361 N.C. 568, 651 S.E.2d 562, aff'd per curiam in part, 362 N.C. 84, 653 S.E.2d 143 (2007). N.C. Gen. Stat. § 50A-204 is no different than § 50A-201(a)(1), which this Court noted "states only that certain circumstances must exist, not that the court specifically make findings to that effect. . . ." T.J.D.W., 182 N.C.App. at 397, 642 S.E.2d at 473. Here, the record establishes that emergency jurisdiction under § 50A-204 existed at the time DSS filed its juvenile petition. DSS was, therefore, awarded custody by a court of competent jurisdiction. See T.J.D.W., 182 N.C.App. at 398, 642 S.E.2d at 474 (noting that the record "provides ample evidence as to the whereabouts at the relevant times of all participants").
Respondents, however, urge that emergency jurisdiction is temporary. Nonetheless, N.C. Gen.Stat. § 50A-204(b) specifically provides: "If there is no previous child-custody determination that is entitled to be enforced under this Article and a child-custody proceeding has not been commenced in a court of a state having jurisdiction under G.S. 50A-201 through G.S. 50A-203, a child-custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under G.S. 50A-201 through G.S. 50A-203." (Emphasis added.)
It is undisputed, as the court found in the termination of parental rights order, that "[p]rior to the respondent mother moving to Rutherford County, North Carolina, in April 2005, there had been no prior custody proceedings or court orders entered with regard to the minor children in the State of Alabama, or in the State of North Carolina." It is equally undisputed that no other orders have been entered by any other state with jurisdiction since the initial nonsecure custody orders entered in this State granting DSS custody. By operation of N.C. Gen.Stat. § 50A-204(b), therefore, those custody orders "remain[ed] in effect," and DSS had standing to file a petition or motion for termination of parental rights.
As a second basis for reversal of the trial court's termination of parental rights order, respondents point to the temporary nature of emergency jurisdiction under N.C. Gen.Stat. § 50A-204 and argue that the court was limited to entering temporary orders and, therefore, lacked jurisdiction under the UCCJEA to terminate respondents' parental rights. A critical issue with respect to this argument is whether "home state" jurisdiction may be determined as of the date of the filing of the petition or motion for termination of parental rights.[2] Although respondents assume, without citing authority, that the determination should be made as of the date of the filing of the initial juvenile petition, DSS assumes, also without citing any authority, that the determination should be made as of the date of the filing of the petition or motion to terminate parental rights. The parties do not dispute that "home state" jurisdiction did not exist as of the date of the filing of the juvenile petition, but that North Carolina would meet the definition of "home state," N.C. Gen.Stat. § 50A-102(7) (2007), if it were determined as of the date of the initiation of the termination of parental rights proceedings.
The statute itself, N.C. Gen.Stat. § 50A-201(a)(1), requires that this State be "the home state of the child on the date of the commencement of the proceeding." The definitions statute for the UCCJEA states: "'Commencement' means the filing of the first pleading in a proceeding." N.C. Gen. Stat. § 50A-102(5). The UCCJEA does not, however, define "proceeding." There is, however, a definition of a "Child-custody proceeding":
"Child-custody proceeding" means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence in which the issue may appear. The term does not include a proceeding involving juvenile delinquency, *29 contractual emancipation, or enforcement under Part 3 of this Article.
N.C. Gen.Stat. § 50A-102(4) (emphasis added). This definition does not, however, unambiguously resolve the question whether neglect, abuse, and dependency proceedings should be viewed for § 50A-201 purposes as separate proceedings from a termination of parental rights proceeding. See also N.C. Gen.Stat. § 7B-1101 (2007) (granting district courts "exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion").
Nevertheless, we need not specifically resolve this question because In re M.B., 179 N.C.App. 572, 635 S.E.2d 8 (2006), establishes that "home state" jurisdiction exists in this case. In M.B., as in this case, North Carolina was not the child's home state when the trial court entered a nonsecure custody order. Id. at 572, 635 S.E.2d at 9. The child had moved to North Carolina on 28 March 2005. Id. The trial court adjudicated the child neglected on 17 June 2005. Id. at 573, 635 S.E.2d at 9. On 10 October 2005, the trial court entered an order finding that no custody order had been entered or was pending in any other state and that the child and her parents had, by that time, lived in North Carolina for six months. Id. at 576, 635 S.E.2d at 11.
This Court held that the trial court had jurisdiction to enter the initial custody orders, on 22 April 2005 and in May 2005, based on N.C. Gen.Stat. § 50A-204 emergency jurisdiction. M.B., 179 N.C.App. at 576, 635 S.E.2d at 11. With respect to the adjudication order, the Court held that "any issue of temporary jurisdiction is now moot" because M.B. and her parents had been physically present in North Carolina for more than six months, and no custody order had been entered and no custody proceeding was pending in any other state. Id. The Court held further: "Thus, North Carolina is now the home state under the UCCJEA . . ., and as such, North Carolina courts have jurisdiction to determine child custody." Id. The Court concluded: "After M.B., M.B.'s mother, and respondent father had remained in North Carolina for more than six months, and when no custody orders were entered in any other state, North Carolina became the home state wherein the trial court had jurisdiction under the UCCJEA to enter orders adjudicating M.B. neglected." Id.
Similarly, in this case, we have already held that the trial court had emergency jurisdiction to enter the initial nonsecure custody orders. By the time of the filing of the petition and motion for termination of parental rights, Eddie, Annie, and respondent mother had been physically present in North Carolina for two years. Further, the court found that "[p]rior to the respondent mother moving to Rutherford County, North Carolina, in April, 2005, there had been no prior custody proceedings or court orders entered with regard to the minor children in the State of Alabama, or in the State of North Carolina. . . . No custody proceedings involving the minor children have been filed either prior to or subsequent to April 20, 2005 in Alabama or any other state (other than this pending juvenile proceeding)."
The only distinction between this case and M.B. is the fact that respondent father is not and has not been a resident of North Carolina. "Home state," however, is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen.Stat. § 50A-102(7) (emphasis added). The focus is thus on how long the child has lived in the state with either one parent or someone acting as a parent. The father's residency is, therefore, immaterial to the analysis of M.B. Thus, respondent father's residency in Alabama does not, in this case, change the children's "home state."
M.B. requires us to conclude "that any issue of temporary jurisdiction is now moot." Given the children's residency and the lack of any other custody proceedings or orders in other states, "North Carolina became the home state wherein the trial court had jurisdiction under the UCCJEA to enter *30 orders" terminating respondents' parental rights. M.B., 179 N.C.App. at 576, 635 S.E.2d at 11.
Respondent father points also to N.C. Gen.Stat. § 7B-1101's proviso that "before exercising jurisdiction under this Article regarding the parental rights of a nonresident parent, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201 or G.S. 50A-203, without regard to G.S. 50A-204." (Emphasis added.) While this provision would preclude basing the termination of parental rights court's jurisdiction on N.C. Gen.Stat. § 50A-204, the holding in M.B. establishes that the court's jurisdiction in this termination of parental rights proceeding fell under the "home state" jurisdiction of N.C. Gen.Stat. § 50A-201(a)(1).
Finally, respondent father advances the additional argument that he "was never personally served with the summons and petition in the underlying [adjudication] action; thus the trial court lacked personal jurisdiction, and the adjudication judgment would be void." According to respondent father, this lack of personal jurisdiction in the adjudication phase means that "[t]he trial court therefore had no subject matter jurisdiction to enter the termination order."
This argument overlooks the well-established principle that even when a summons is issued to only one parent of a child, the court still has jurisdiction to determine the status of the child in an abuse, neglect, and dependency proceeding. See In re Poole, 151 N.C.App. 472, 476-77, 568 S.E.2d 200, 203 (2002) (Timmons-Goodson, J., dissenting) (holding that failure to issue and serve summons on respondent father did not divest court of subject matter jurisdiction to find child dependent when summons was issued and served on mother), adopted per curiam, 357 N.C. 151, 579 S.E.2d 248 (2003). See also In re Arends, 88 N.C.App. 550, 554, 364 S.E.2d 169, 171 (1988) (holding that "in order to have a child declared dependent, it is not necessary to serve the petition [or motion] on both parents, but only on one of them").
The record on appeal includes the return of service indicating that respondent mother was personally served on 27 April 2005 with the summonses and juvenile petitions relating to both children. Accordingly, the trial court had subject matter jurisdiction over the initial adjudication proceeding.
The dissent's contention otherwise reflects a misunderstanding of adjudication proceedings. The dissent argues that the trial court did not have jurisdiction to enter an order adjudicating E.X.J. and A.J.J. to be dependant as to respondent father. This Court has, however, held that in these types of proceedings-in contrast to termination of parental rights proceedings-the trial court is not required to determine the culpability of each parent as to the children. In In re J.S., 182 N.C.App. 79, 86, 641 S.E.2d 395, 399 (2007), the Court explained:
The purpose of abuse, neglect and dependency proceedings is for the court to determine whether the juvenile should be adjudicated as having the status of abused, neglected or dependent. . . . The purpose of the adjudication and disposition proceedings should not be morphed on appeal into a question of culpability regarding the conduct of an individual parent.
As a result, in this case, there was no adjudication of dependency as to a particular parent; there was just an adjudication that the children were dependent.
Further, both our Supreme Court and this Court have previously rejected attempts to link initial adjudication and termination of parental rights orders in such a way as to make the termination of parental rights order dependent on the validity of the initial adjudication order. In In re R.T.W., 359 N.C. 539, 553, 614 S.E.2d 489, 497 (2005), the Supreme Court emphasized, in reversing this Court: "Simply put, a termination order rests on its own merits." Likewise, this Court explained: "[B]y necessarily tying the adjudication proceedings and termination of parental rights proceedings together, respondent misapprehends the procedural reality of matters within the jurisdiction of the district court: Motions in the cause and original petitions for termination of parental rights may be sustained irrespective of earlier juvenile court activity." In re O.C. & O.B., 171 N.C.App. 457, 463, 615 S.E.2d 391, 395 *31 (2005). Thus, there is no legal basis for the dissenting opinion's suggestion that the trial court lacked jurisdiction in the termination of parental rights proceeding because the father was not served with a summons in the initial adjudication proceeding.
We also note that the dissenting opinion in effect urges that the initial adjudication order must be reversed. Yet, that order is not before us. The father's notice of appeal does not, in violation of N.C.R.App. P. 3(d), "designate the judgment or order from which appeal is taken," but, in any event, the initial adjudication was entered in 2005, and, therefore, any purported appeal would be untimely under Rule 3(c). This Court does not have jurisdiction over the initial adjudication order.
The dissenting opinion also cites to the official commentary to N.C. Gen.Stat. § 50A-205 (2007), which states: "Parents whose parental rights have not been previously terminated and persons having physical custody of the child are specifically mentioned as persons who must be given notice." Yet, in this case, respondent father did receive notice and an opportunity to be heard. DSS did not ultimately file a motion in the cause  the initial adjudication proceeding  with respect to the termination of respondent father's parental rights. Instead, DSS filed a separate petition  an independent action  and properly served respondent father with a summons and that petition. Further, the initial adjudication order was not in any way relied upon as a basis for terminating respondent father's parental rights. Respondent father had full notice of the termination of parental rights proceeding and a full opportunity to be heard. Therefore, this assignment of error by respondent father is overruled.
Much of the remaining discussion in the dissenting opinion was not argued by respondent father at trial or on appeal. Therefore, those matters are not before this Court, and we do not address them. In addition, although respondents assign error to a number of the trial court's findings of fact and conclusions of law, they make no arguments that the evidence does not support the trial court's findings or that the findings do not, in turn, support its conclusions. These assignments of error, therefore, are deemed abandoned. N.C.R.App. P. 28(a). Accordingly, we affirm the trial court's order terminating respondents' parental rights.
Affirm.
Judge JACKSON concurs.
Judge TYSON concurs in part and dissents in part in a separate opinion.
TYSON, Judge concurring in part and dissenting in part.
I concur with that portion of the majority's opinion, which affirms the trial court's order terminating respondent-mother's parental rights. I disagree with that portion of the majority's opinion, which affirms the trial court's order terminating respondent-father's parental rights. DSS failed to properly serve the summonses and petitions of the original adjudication action as is constitutionally required by the Fourteenth Amendment of the United States Constitution and as is statutorily required by N.C. Gen.Stat. § 50A-205. I vote to vacate the trial court's orders with respect to respondent-father and respectfully dissent.

I. Notice
Undisputed evidence shows the non-resident respondent-father was never served with the initial summonses and juvenile petitions and the trial court lacked personal jurisdiction over him to enter the adjudication order. Respondent-father asserts that without personal jurisdiction over him to enter the adjudication order, DSS's emergency intervention ended and the children should have been returned to his home in Alabama. Without any statutory basis for continued DSS intervention, the trial court was divested of jurisdiction to enter any order terminating respondent-father's parental rights.
North Carolina district courts have "exclusive, original [subject matter] jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen.Stat. § 7B-200 (2005). North Carolina has also adopted the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA"), which contains jurisdictional *32 and notice requirements that DSS must satisfy in order for the district court to assert, acquire, and maintain jurisdiction to adjudicate dependency petitions over non-resident parents. N.C. Gen.Stat. § 50A-101, et seq.
The record shows and the majority's opinion acknowledges that DSS properly contacted the Lee County, Alabama Department of Human Resources ("DHR"), who advised DSS it "would assist [ ] DSS in any way possible." Although never served with the summons and petition, respondent-father sent a letter to the clerk of court dated 21 August 2005, prior to the adjudication hearing, stating that he was "not able to make it" to the hearing, but that he currently had a "good job and . . . a place to stay" and would be getting a raise and a place of his own in the near future.
Even presuming the exercise of "temporary emergency jurisdiction" was proper, without valid service of process upon respondent-father, that exercise ended when DSS became aware that the children's home state was Alabama, their father was a resident there, and DHR would "assist [ ] DSS in any way possible."
N.C. Gen.Stat. § 7B-200(b) provides that "[t]he court shall have jurisdiction over the parent or guardian of a juvenile who has been adjudicated abused, neglected, or dependent . . . provided the parent or guardian has been properly served with summons. . . ." (Emphasis supplied). This express statutory limitation and pre-condition must be satisfied before jurisdiction is acquired. Id. "[S]ubject matter jurisdiction may be raised at any time by the parties or by the court ex mero motu." In re J.D.S., 170 N.C.App. 244, 248, 612 S.E.2d 350, 353 (citations omitted), cert. denied, 360 N.C. 64, 623 S.E.2d 584 (2005). This Court has repeatedly stated that "[t]he summons, not the complaint, constitutes the exercise of the power of the State to bring the defendant before the court." Childress v. Forsyth County Hospital Auth., 70 N.C.App. 281, 285, 319 S.E.2d 329, 332 (1984) (citation omitted), disc. review denied, 312 N.C. 796, 325 S.E.2d 484 (1985); see also In re T.R.P., 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006) ("Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act[.]").
This Court has previously held that a trial court acquired authority to enter an adjudication of dependency when the summons and juvenile petition was served only upon one parent. See In re Poole, 151 N.C.App. 472, 476, 568 S.E.2d 200, 203 (2002) (Timmons-Goodson, J., dissenting) (citing In the Matter of Arends, 88 N.C.App. 550, 554, 364 S.E.2d 169, 171 (1988)), rev'd per curiam for reasons stated in the dissent, 357 N.C. 151, 579 S.E.2d 248 (2003). However, the Court in In re Poole relied upon case law that based its analyses upon a now repealed and amended statute which provided that the summons must be served upon "the parents or either of them." See N.C. Gen.Stat. § 7A-283 (1969) (repealed 1979) (emphasis supplied); In the Matter of Arends, 88 N.C.App. at 554, 364 S.E.2d at 171; In re Yow, 40 N.C.App. 688, 691, 253 S.E.2d 647, 649, disc. rev. denied, 297 N.C. 610, 257 S.E.2d 223 (1979).
N.C. Gen.Stat. § 7B-406(a) (2005) mandates that "[i]mmediately after a petition has been filed alleging that a juvenile is abused, neglected, or dependent, the clerk shall issue a summons to the parent, guardian, custodian, or caretaker requiring them to appear for a hearing at the time and place stated in the summons." (Emphasis supplied). See also N.C. Gen.Stat. § 7B-101 (2005) ("The singular includes the plural, the masculine singular includes the feminine singular and masculine and feminine plural unless otherwise specified."). With this amendment, due process and our General Assembly require the summons and juvenile petition to be served upon each parent. N.C. Gen.Stat. § 7B-406(a). Any notion requiring only one parent to be served with the summons and juvenile petition to adjudicate the rights of the parent not properly served with process: (1) presents dangerous repercussions to a parent's constitutional right to exclusive care, custody, and control of their minor children; (2) is constitutionally deficient; and (3) is inconsistent with the purposes of the juvenile code. See N.C. Gen.Stat. § 7B-100(a) (2005) (providing that one of the purposes of the juvenile code *33 is "[t]o provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents[.]").
Further, the facts before us are distinguishable from the facts presented in In re Poole. The UCCJEA did not control the analysis or outcome of that case, because the issues before the Court in In re Poole dealt solely with intrastate parties and matters. See In re Poole, 151 N.C.App. at 476, 568 S.E.2d at 202-03 ("The petition for adjudication of neglect and dependency was brought pursuant to the Juvenile Code, and there is no indication in the record that any other court in any other State might have competing jurisdiction. As such, the UCCJEA simply does not control the outcome of the case at bar."). Here, the trial court entered the initial nonsecure custody orders and the adjudication order based upon jurisdiction under the UCCJEA.
The UCCJEA mandates:

[b]efore a child-custody determination is made under this Article, notice and an opportunity to be heard in accordance with the standards of G.S. 50A-108 must be given to all persons entitled to notice under the law of this State as in child-custody proceedings between residents of this State, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child.
N.C. Gen.Stat. § 50A-205(a) (2005) (emphasis supplied). The official comment to section 50A-205 states, "[p]arents whose parental rights have not been previously terminated and persons having physical custody of the child are specifically mentioned as persons who must be given notice." N.C. Gen.Stat. § 50A-205 official commentary, para. 1 (emphasis supplied). The official comment further states, "[a]n order is entitled to interstate enforcement and nonmodification under this Act only if there has been notice and an opportunity to be heard." N.C. Gen.Stat. § 50A-205 official commentary, para. 2 (emphasis supplied). There is no dispute that respondent-father, an Alabama resident, was entitled to service of process and notice before his parental rights were impaired and his children were unlawfully kept away from him in another state.
Here, copies of the initial summonses and juvenile petitions were issued to respondent-father and were returned as "unclaimed." Service was not accomplished by any other means. At the time of the adjudication hearing, respondent-father had never been notified of the allegations in the juvenile petition, of any alleged conduct by him that was inconsistent with his constitutionally protected parental rights, nor the basis upon which DSS was relying to adjudicate E.X.J. and A.J.J. Based upon the mandatory notice requirements of the UCCJEA, the trial court could not enter "a child-custody determination" regarding E.X.J. and A.J.J. or deny or impact respondent-father's constitutionally protected rights to the exclusive "care, custody, and control" of his minor children without notice and an opportunity to be heard to contest the allegations. N.C. Gen.Stat. § 50A-205; Adams v. Tessener, 354 N.C. 57, 60, 550 S.E.2d 499, 501 (2001) (citation omitted).

II. Due Process
Failure to issue and serve the initial summonses and juvenile petitions upon respondent-father also implicates his Fourteenth Amendment due process rights. See Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); see also In the Matter of Arends, 88 N.C.App. at 555, 364 S.E.2d at 172 ("[T]he failure to serve [respondent-father] with notice of the neglect and dependency proceedings raises the question of whether the father has been deprived of his right to due process[.]").
In determining whether respondent-father's due process rights have been violated, this Court is required to engage in balancing the rights of the father to exclusive care, custody, and control of his minor children, *34 the State's interest in the welfare of the children, and the childrens' right to be protected by the State. In the Matter of Arends, 88 N.C.App. at 555, 364 S.E.2d at 172. This Court recently reiterated:
as noted by our Supreme Court, the inherent power of the government to act through its agencies and subdivisions . . . is subject to restraint in order to preserve and maintain a proper balance between the State's interest in protecting children from mistreatment and the right of parents to rear their children without undue government interference. Thus, in a proceeding implicating a fundamental right, due process demands that DSS abide by the statutory provisions established by our General Assembly for a court to acquire subject matter jurisdiction over the matter. As with the requirement to verify the petition, the issuance of a summons [and service] to each of the parties named in the statute is a minimally burdensome limitation on government action.
In the Matter of S.F., ___ N.C.App. ___, ___, 660 S.E.2d 924, ___, (N.C.2008) (No. COA08-197) (internal citation and quotation omitted).
Here, the trial court adjudicated E.X.J. and A.J.J. to be dependant based upon respondent-mother's stipulation. Her allegations that she fled Alabama to escape "an abusive relationship" with respondent-father were wholly unsubstantiated. No clear, cogent, and convincing evidence in the record supports any abuse or neglect of either child by respondent-father. Finally, the trial court entered no findings or conclusions that either child was neglected or abused by respondent-father in the adjudication order.
Respondent-father was hundreds of miles away, residing and working in another state and was without any notice of the mother's unsubstantiated allegations contained in the juvenile petition. There can be no dispute DSS's lack of notice and service violated respondent-father's constitutional due process rights. Id. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.
Because the Fourteenth Amendment and the UCCJEA require that "any parent whose parental rights have not been previously terminated [ ]" must be given notice and an opportunity to be heard before a "child-custody determination is made[,]" the trial court did not acquire jurisdiction over respondent-father to enter an order adjudicating E.X.J. and A.J.J. as dependant as to him. N.C. Gen.Stat. § 50A-205(a). Because the trial court lacked jurisdiction to enter the adjudication order, it necessarily follows that the trial court lacked jurisdiction to terminate respondent-father's parental rights on any ground.
DSS's failure to serve respondent-father with the initial summonses and petitions violated his constitutional right to due process. The trial court's adjudication of dependency and order terminating respondent-father's parental rights is void for want of jurisdiction and should be vacated.

III. Conclusion
Earlier this month, this Court unanimously reiterated:
While the best interest of . . . [the] juveniles in neglect, abuse, and dependency proceedings is our polar star, these cases likewise concern the fundamental right of a parent to make decisions concerning the care, custody, and control of his or her child under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In light of the due process concerns related to terminating this fundamental right of Respondent-father, the requirement of a summons must be treated as a jurisdictional prerequisite, as specified by the General Assembly, rather than a mere procedural formality.
In the Matter of S.F., ___ N.C.App. at ___, 660 S.E.2d at 927 (internal citation and quotations omitted).
Because DSS failed to serve the non-resident respondent-father with the requisite summonses and juvenile petitions, which violated his due process and statutory rights, the trial court's order terminating respondent-father's parental rights is void for want *35 of jurisdiction and should be vacated. N.C. Gen.Stat. § 50A-205. Because I would vacate the trial court's order terminating respondent-father's parental rights for lack of subject matter jurisdiction, "the legal status of the juvenile and the custodial rights of the parties shall revert to the status they were before the juvenile petition was filed." Id. (quoting N.C. Gen.Stat. § 7B-201.). I respectfully dissent.
NOTES
[1] The pseudonyms "Eddie" and "Annie" will be used throughout the opinion to protect the children's privacy and for ease of reading.
[2] Because of our disposition of this issue, we do not address DSS' contention that jurisdiction also existed under N.C. Gen.Stat. § 50A-201(a)(2) or N.C. Gen.Stat. § 50A-204(b).