DILLON, Judge.
Respondents-Appellants (individually, "Mother" and "Father," collectively "Parents") appeal from the trial court's order terminating their parental rights to Y.L.M.C. ("Yves"), F.J.C.C. ("Frank"), and S.I.C.C. ("Stacy") (collectively "the Juveniles").[1] After careful review, we affirm.
I. Background
In or around December 2012, Parents, who were Cuban political refugees, immigrated to the United States. Father is Frank and Stacy's biological father, and Yves's stepfather.
Wake County Human Services ("WCHS") first became involved in the matter after allegations arose that Father had physically assaulted Frank, Yves, and Mother.
In November 2013,[2] WCHS obtained non-secure custody of the Juveniles after Mother moved to set aside a domestic violence protective order prohibiting contact between her and Father.
On 28 March 2014, the trial court entered an order adjudicating the Juveniles neglected while dismissing the abuse allegations. In addition, the trial court continued WCHS custody of the Juveniles and directed Parents to comply with Out of Home Family Services Plans (collectively "Case Plans," individually, "Case Plan") to address the issues that led to the Juveniles' removal.
WCHS moved to terminate Parents' parental rights on the basis of neglect and failure to make reasonable progress toward correcting the conditions that led to removal. See N.C. Gen. Stat. § 7B-1111(a)(1), (2) (2015). Additionally, WCHS moved to terminate Father's parental rights on the separate ground of willful abandonment. See N.C. Gen. Stat. § 7B-1111(a)(7).
On 29 March 2016, the trial court entered an order (1) terminating Parents' parental rights on the basis of neglect and lack of reasonable progress and (2) terminating Father's parental rights on the basis of willful abandonment. Parents timely appealed.
II. Subject Matter Jurisdiction
We must first address whether the trial court lacked subject matter jurisdiction to terminate Parents' parental rights. Mother contends that the trial court never acquired jurisdiction in the underlying juvenile matter and, therefore, had no authority to grant custody to WCHS. Specifically, Mother argues that (1) the trial court failed to make findings of fact regarding the length of the Juveniles' stay in North Carolina prior to the filing of the juvenile petition and (2) there was no evidence in the record as to the Juveniles' residency. Without a valid order granting WCHS custody of the Juveniles, Mother avers that WCHS lacked standing to move to terminate parental rights, and, consequently, the trial court lacked jurisdiction to terminate parental rights. We disagree.
"Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question[.]... [It] cannot be conferred by consent or waiver, and ... may be raised [as an issue] for the first time on appeal." In re H.L.A.D. , 184 N.C. App. 381, 385, 646 S.E.2d 425, 429 (2007) (citation omitted) (internal quotation marks omitted).
A North Carolina district court has exclusive original jurisdiction over a termination of parental rights action if and only if it has jurisdiction to render a child custody determination under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA" or "the UCCJEA"). See N.C. Gen. Stat. § 7B-1101 ; In re E.J. , 225 N.C. App. 333, 336, 738 S.E.2d 204, 206 (2013) ("[T]he jurisdictional requirements of the [UCCJEA] ... must also be satisfied for a court to have authority to adjudicate petitions filed pursuant to our juvenile code."). Under the UCCJEA, a North Carolina court has jurisdiction to render an initial custody determination if North Carolina "is the home state of the child on the date of the commencement of the proceeding." N.C. Gen. Stat. § 50A-201(a)(1) (2015). "Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." Id. § 50A-102(7).
After careful review, we reject Mother's argument that the trial court was required to make specific findings of fact regarding the Juveniles' stay in North Carolina. We have repeatedly held that the UCCJEA does not require a trial court to make findings of fact establishing jurisdiction. In re E.X.J. , 191 N.C. App. 34, 40, 662 S.E.2d 24, 27 (2008). Rather, UCCJEA jurisdiction may be asserted where the record establishes that jurisdiction existed at the time the juvenile petition was filed. Id.
Here, contrary to what Mother has argued, the record establishes that North Carolina was the home state of the Juveniles at the time the juvenile petition was filed. The Affidavits of Status of Minor Child, which were attached to the juvenile petition, establish that Parents and the Juveniles moved from Cuba to North Carolina in December 2012 and had been living in North Carolina continuously from December 2012 through 26 November 2013, the date of filing of the juvenile petition. As the Juveniles continuously lived in North Carolina for eleven months immediately preceding the filing of the juvenile petition, North Carolina is their home state for the purposes of the UCCJEA. N.C. Gen. Stat. § 50A-201(a)(1). Therefore, the trial court properly acquired jurisdiction under the UCCJEA to enter a custody order. As the trial court entered a valid custody order, WCHS had standing to file a motion to terminate parental rights. Accordingly, the trial court had subject matter jurisdiction to terminate Parents' parental rights.
III. Standard of Review
For the adjudicatory phase of a termination proceeding, "the standard for appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support its conclusions of law." In re D.R.B. , 182 N.C. App. 733, 735, 643 S.E.2d 77, 79 (2007). In contrast, the appellate standard of review for the dispositional stage is "whether the trial court abused its discretion in terminating parental rights." Id.
IV. Analysis
We now address Parents' specific challenges to the trial court's termination of their parental rights. As we find that the trial court's findings of fact support one ground for termination, we conclude that the trial court did not err in terminating Parents' parental rights. See In re Humphrey , 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003).
A. Mother's Parental Rights Were Properly Terminated
1. Mother Failed to Make Reasonable Progress
Mother contends that the trial court's findings of fact were inadequate to support termination of her parental rights for her alleged lack of reasonable progress. Additionally, Mother argues that the trial court grounded its ruling solely in events that occurred before the filing of the termination motion and therefore erroneously overlooked progress made between the date of filing of the motion and the date of the hearing. We are not persuaded.
At the outset, we note that Mother does not dispute the trial court's findings of fact regarding her purported lack of reasonable progress and that these findings of fact are therefore binding on appeal. See In re M.D. , 200 N.C. App. 35, 43, 682 S.E.2d 780, 785 (2009).
In addition, we acknowledge that a trial court must consider any progress made by the parent leading up to the termination hearing. See In re A.C.F. , 176 N.C. App. 520, 528, 626 S.E.2d 729, 735 (2006). However, a review of the trial court's findings of fact establishes Mother's limited and sporadic progress between the summer of 2014 and the spring of 2015. These findings of fact demonstrate that Mother failed to comply with her Case Plan. Specifically, Mother failed to: (1) comply with the treatment recommendations of a mental health assessment; (2) obtain treatment-even after being hospitalized; (3) contact WCHS; and (4) demonstrate the skills learned in her parenting classes. The findings of fact also establish that Mother had not visited the Juveniles since June 2014, and that some of her previous visits had gone poorly. Indeed, Mother left one visit prematurely as she could not handle Stacy's emotions. During another visit, police assistance was requested.
Contrary to what Mother contends, the trial court did in fact consider evidence of Mother's progress in the months leading up to the termination hearing. Indeed, one of the findings of fact, Finding of Fact 26, concerns a counseling session Mother attended with Father in August 2015, one month prior to the beginning of the termination hearing. Additionally, Mother herself testified at the hearing regarding her employment, housing, parenting classes, and therapy during the months leading up to the termination motion and hearing. We are satisfied that evidence of Mother's conduct in the months leading up to the hearing was before the trial court.
However, assuming the trial court could have made more findings of fact regarding Mother's progress, if any, during the time period between the filing of the termination motion and the hearing, the trial court was nonetheless justified in concluding that Mother's progress was not reasonable. "A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." In re Nolen , 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995). "Extremely limited progress is not reasonable progress." Id. at 700, 453 S.E.2d at 224-25. After repeatedly failing to contact WCHS, Mother waited until the spring of 2015 to begin working on her Case Plan, nearly a year after the trial court's adjudication and disposition order. Furthermore, she has failed to identify any evidence which would have altered the trial court's conclusion. Under these circumstances, Mother's limited progress did not meet the requirement of reasonable progress. Therefore, the trial court did not err in terminating Mother's parental rights for lack of reasonable progress.
B. Father's Parental Rights Were Properly Terminated
In pertinent part, Father challenges Finding of Fact 21 and Finding of Fact 22, along with the trial court's conclusion that he failed to make reasonable progress in correcting the conditions that led to the Juveniles' removal.[3] We address those arguments in turn.
1. Finding of Fact 21 Was Supported By Competent Evidence
In Finding of Fact 21, the trial court concluded that Father was discharged from a domestic violence prevention program ("DOSE") after only two classes as he was allegedly disruptive and denied that he needed treatment. Father's argument appears to be that he was not discharged for being disruptive but rather because he had a misunderstanding as to what constitutes domestic violence in the United States and refused to admit that he was an offender. We are not persuaded.
Notwithstanding Father's testimony that he was terminated from DOSE because he would not admit he mistreated his wife, there is ample evidence in the record supporting Finding of Fact 21. A court report provides that during his DOSE classes, Father would not take responsibility for his actions; was disruptive, confrontational, and disrespectful to the facilitator; and only wanted to talk about the uprising against the government. We therefore find support for this finding of fact and reject Father's challenge.
2. Finding of Fact 22
Father also challenges Finding of Fact 22, in which the trial court determined that Father continues to deny that he inappropriately disciplined the Juveniles. Father argues that he continued to deny abuse or domestic violence as the standard for "inappropriate discipline" differs in Cuba. Father's argument appears to be that based on this cultural difference, it is inequitable to label his discipline as inappropriate. We are not convinced. Father devoted significant testimony to explaining the different views on corporal punishment in the United States and Cuba. Nonetheless, Father ultimately testified as follows:
What I do disagree with is the fact that they say I am an abuser and that I mistreat my children. I do admit that I have corrected my children, probably-maybe not the way that they do things in the United States.
Father's testimony at the hearing suggests that he believed his actions were appropriate, even after having learned about the cultural differences regarding discipline in the United States. Therefore, Finding of Fact 22 is supported by competent evidence. As Father does not challenge any of the remaining, pertinent findings of fact, they are binding on appeal. See M.D. , 200 N.C. App. at 43, 682 S.E.2d at 785.
3. Lack of Reasonable Progress
Father contends that he made reasonable progress given the cultural and language barriers he encountered. While Father concedes that he was originally resistant to WCHS involvement, he argues that he ultimately complied with his Case Plan by maintaining housing and employment, obtaining a mental health assessment, and completing his parenting classes. We disagree.
As previously noted, "[a] finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." Nolen , 117 N.C. App. at 699, 453 S.E.2d at 224. A review of the trial court's findings of fact establishes that Father's reunification attempts were insufficient and dilatory. The findings of fact establish that Father refused to enter into his Case Plan and receive services until March 2015-nearly sixteen months after the Juveniles were removed from the home and nearly a year after the trial court's adjudication and disposition order set forth a plan for reunification. The findings of fact show that Father failed to stay in contact with WCHS, was discharged from domestic violence/anger management therapy, and failed to demonstrate the skills learned in his parenting classes. The findings of fact also show that Father never visited the Juveniles. While Father blames his lack of visitation on the fact that it was suspended, it is clear from the record that he could have regained visitation upon entering into his Case Plan.
Lastly, the trial court addressed the language and cultural differences at play in the following finding of fact:
36. This Court acknowledges that language differences and limited Spanish speaking services have been challenges for the parents, however, the Court does not find that these challenges amounted to a barrier that the parents could not have reasonably overcome.
Thus, the record establishes that the trial court weighed evidence pertaining to cultural and language barriers, but ultimately concluded that they did not hinder Parents' ability to make reasonable progress. The trial court did not err in terminating Father's parental rights due to lack of reasonable progress.
V. Conclusion
In conclusion, we find that the trial court had subject matter jurisdiction to terminate Parents' parental rights. Moreover, we hold that the trial court did not err in terminating Parents' parental rights due to their lack of reasonable progress in correcting the conditions that led to removal. As we affirm the trial court's termination of parental rights on this basis, we need not address Parents' remaining arguments. See Humphrey , 156 N.C. App. at 540, 577 S.E.2d at 426.
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR., and DIETZ concur.

Pseudonyms are used to protect the identities of the Juveniles and for ease of reading.

This was the same date WCHS filed the juvenile petition.

Father does challenge a number of other findings of fact, including Finding of Fact 17, and portions of Finding of Fact 16 and Finding of Fact 23. These challenged findings of fact are not necessary to affirm the trial court's conclusion, and we have therefore omitted them from our analysis. See In re T.M., 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) ("When ... ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error.").