660 S.E.2d 924 (2008)
In the Matter of S.F.
No. COA08-197.
Court of Appeals of North Carolina.
June 3, 2008.
Feagan Law Firm, PLLC, by Phillip R. Feagan, Columbus, for Polk County Department of Social Services, petitioner-appellee.
Pamela Newell Williams, Raleigh, for the guardian ad litem-appellee.
Peter Wood, Raleigh, for respondent-appellant.
WYNN, Judge.
"[U]pon the filing of the petition [to terminate parental rights], the court shall cause a summons to be issued" to all those named as respondents, including the juvenile or her court-appointed guardian ad litem.[1] Because the record before us contains no evidence that a summons was issued to the juvenile in the instant case, we must vacate the trial court's order for lack of subject matter jurisdiction.
On 20 August 2003, the Polk County Department of Social Services (DSS) filed a juvenile petition alleging the abuse, neglect, and dependency of minor child S.F. The petition was prompted by a report received by DSS that S.F., three years old at that time, had severe bruising on her face, abdomen, ears, legs, buttocks, and down her back; the doctors who examined her "determined that the injuries were non-accidental and consistent with physical child abuse." S.F. indicated that the injuries were inflicted by her mother's live-in boyfriend; both he and S.F.'s mother were arrested and charged with child abuse.
S.F. remained in the nonsecure custody of DSS and foster care until 18 January 2004, when a consent order was entered in which her parents admitted that S.F. was an abused and neglected child. The trial court gave DSS legal custody of the child at that time, and her foster care placement was continued while DSS also pursued reasonable efforts toward reunification. According to the record, Respondent-father initially "worked hard on various components of his Family Services Case Plan," including conducting regular weekly visits with S.F., securing and maintaining regular employment, moving in with his parents to provide a more stable home situation for S.F., paying child support, and complying with substance abuse treatment recommendations. As a consequence of this progress, S.F. left foster care and moved in for a trial placement with Respondent-father and her paternal grandparents on 16 April 2004. Respondent-father and S.F. moved into their own residence, across the street from the paternal grandparents, in May 2004.
However, on 4 October 2004, DSS learned that Respondent-father had been charged with criminal drug and weapon offenses and had also tested positive for several controlled substances. S.F. was then moved back into the home of her paternal grandparents. At a permanency planning hearing on 12 April 2005, the trial court awarded guardianship of the child to her paternal grandparents and directed DSS to cease reunification efforts with Respondent-father. In that order, the trial court noted:
While it is heartbreaking to see the juvenile lose the close relationship she had just established with the Respondent Father, he has not complied with substance abuse treatment recommendations made in his assessment in November 2004; he continues to test positive to methamphetamine; and he is living with a woman, who, due to previously documented drug use, has had her child placed by the Court with a relative.
According to DSS, the paternal grandmother and Respondent-father were informed that a condition of awarding the guardianship of S.F. to the paternal grandparents was that neither Respondent-father nor his girlfriend be allowed unsupervised visits with S.F. until they could provide evidence that they were no longer using drugs.
*926 Nevertheless, on 7 July 2005, a report was received by DSS that S.F. was staying with Respondent-father and his girlfriend, and that both adults were using drugs. Respondent-father also continued to test positive for methamphetamine. On 13 September 2005, the trial court held a hearing to consider these changes in circumstances; in an order entered 4 November 2005, the trial court terminated the paternal grandparents' guardianship of S.F. and returned her to DSS custody and foster care. On 10 November 2005, S.F.'s mother relinquished her parental rights to S.F., permanently transferring her legal and physical custody to DSS for the purpose of adoption. The paternal grandparents appealed the termination of their guardianship, and Respondent-father appealed the cessation of reunification efforts by DSS on his behalf.
The trial court conducted a permanency planning hearing on 24 October 2006 and concluded that termination of Respondent-father's parental rights should be pursued, pending the outcome of the appeal filed by Respondent-father and the paternal grandparents. This Court affirmed the trial court's termination of the paternal grandparents' guardianship and the cessation of reunification efforts by DSS with Respondent-father. In re S.F., 181 N.C.App. 149, 639 S.E.2d 454 (Jan. 2, 2007) (No. COA06-297) (unpublished). Following a permanency planning hearing on 10 April 2007, the trial court noted that DSS had been relieved of reunification efforts on 13 March 2006 and ordered that DSS pursue filing a petition for the termination of Respondent-father's parental rights. S.F. has been in foster care with a family in South Carolina since 21 December 2005; the family has previously adopted her half-sister, who also lives in the home.
On 23 May 2007, DSS filed a petition to terminate Respondent-father's parental rights in order to pursue a permanent plan of adoption of S.F. by her current foster family. The record contains a notice of hearing to Respondent-father and his attorney, as well as to the guardian ad litem appointed to S.F. and her attorney advocate. An affidavit of service by the DSS attorney likewise indicates that a copy of the summons, notice of hearing, and petition were mailed to and received by Respondent-father. Following a hearing conducted on 21 August 2007 and 11 September 2007, the trial court entered an order on 21 November 2007, terminating Respondent-father's parental rights as to S.F. From that order, Respondent-father appeals, challenging a number of the trial court's findings of fact and conclusions of law.
At the outset, however, we note that DSS failed to issue a summons to the juvenile or to her appointed guardian ad litem in this case. Although not raised by the parties, "subject matter jurisdiction may be raised at any time . . . by the court ex mero motu." In re J.D.S., 170 N.C.App. 244, 248, 612 S.E.2d 350, 353, cert. denied, 360 N.C. 64, 623 S.E.2d 263 (2005); N.C. R.App. P. 10(a) (2007). Significantly, the "summons, not the complaint, constitutes the exercise of the power of the State to bring the defendant before the court." Childress v. Forsyth County Hosp. Auth., Inc., 70 N.C.App. 281, 285, 319 S.E.2d 329, 332 (1984) (citation omitted), disc. review denied, 312 N.C. 796, 325 S.E.2d 484 (1985).
According to statutory law, "upon the filing of the petition [to terminate parental rights], the court shall cause a summons to be issued. The summons shall be directed to . . . [t]he juvenile." N.C. Gen.Stat. § 7B-1106(a)(2005) (emphasis added). The statute further provides an exception that "the summons and other pleadings or papers directed to the juvenile shall be served upon the juvenile's guardian ad litem if one has been appointed." Id.; see also In re J.A.P., ___ N.C.App. ___, ___, 659 S.E.2d 14, 16 (2008) ("Plainly, where a guardian ad litem has been appointed for the juvenile, the statute directs that service of the summons be made on the guardian ad litem rather than on the juvenile."). We have likewise recently held that this requirement is jurisdictional, such that "the failure to issue a summons to the juvenile deprives the trial court of subject matter jurisdiction." In re K.A.D., ___ N.C.App. ___, ___, 653 S.E.2d 427, 428-29 (2007). Thus, without the proper issuance of a summons, "an order terminating parental rights must be vacated for lack of subject *927 matter jurisdiction." Id. at ___, 653 S.E.2d at 429; see also In re T.R.P., 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006) ("Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act[.]"). As no such summons was issued in this case, either to S.F. or to her appointed guardian ad litem, we must vacate the trial court's order terminating Respondent-father's parental rights to S.F.
Recognizing the need for permanence and stability in S.F.'s life, and the apparent suitability of her current placement in South Carolina, we do not reach this conclusion lightly. Nevertheless, given the number of cases that have recently relied on and discussed K.A.D. and this jurisdictional requirement, we write further to outline the reasoning supporting this decision. While the best interest of S.F. and other juveniles in neglect, abuse, and dependency proceedings is our "polar star," see In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984), these cases likewise concern the fundamental right of a parent "`to make decisions concerning the care, custody, and control' of his or her child[ ] under the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Adams v. Tessener, 354 N.C. 57, 60, 550 S.E.2d 499, 501 (2001) (quoting Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49, 57 (2000)). In light of the due process concerns related to terminating this fundamental right of Respondent-father, the requirement of a summons must be treated as a jurisdictional prerequisite, as specified by the General Assembly, rather than a mere procedural formality. See, e.g., T.R.P., 360 N.C. at 591, 636 S.E.2d at 791 ("[A] review of the Juvenile Code reveals that . . . verification of the petition in an abuse, neglect, or dependency action as required by N.C.G.S. § 7B-403 is a vital link in the chain of proceedings carefully designed to protect children at risk on one hand while avoiding undue interference with family rights on the other.").
Indeed, we observe that the General Assembly has established by statute two means by which proceedings to terminate an individual's parental rights may be initiated: (1) by filing a petition to initiate a new action concerning the juvenile; or (2) in a pending child abuse, neglect, or dependency proceeding in which the district court is already exercising jurisdiction over the juvenile and parent, by filing a motion to terminate pursuant to N.C. Gen.Stat. § 7B-1102. If the latter means is employed, the General Assembly has provided that the movant "shall prepare a notice" directed to the parents of the juvenile, the guardians, the custodian, the county department of social services charged with the juvenile's placement, the juvenile's guardian ad litem, and the juvenile if twelve years or older at the time the motion is filed. N.C. Gen.Stat. § 7B-1106.1. Thus, because the court has already acquired subject matter jurisdiction over the juvenile and parents because of the ongoing proceedings, a new summons is not necessary; rather, mere notice of the hearing is sufficient.
By contrast, when a petition to terminate is filed, the petition initiates an entirely new action before the court, rather than simply continuing a long process begun with the petition alleging abuse, neglect, or dependency. As such, the General Assembly has required that a summons "shall" be issued and directed to the parents, the guardians, the custodian, the county department of social services charged with the juvenile's placement, the juvenile's guardian ad litem, and the juvenile. Id. § 7B-1106. Unlike the notice requirement in the case of a motion, there is no age restriction on directing the summons to the juvenile; that is, the statute directs that any juvenile who is the subject of a petition to terminate parental rights must receive a summons. Id.; see also In re I.D.G., ___ N.C.App. ___, ___, 655 S.E.2d 858, 859-60 (2008) (noting that in many instances DSS has the option to file a motion to terminate, requiring only a notice of hearing, or a petition to terminate, which requires the issuance of a summons to the juvenile).
In a case such as the one at bar, where the juvenile has been in the custody of DSS for an extended period of time, DSS has the option to use either of these means to begin proceedings to terminate the parental rights of the juvenile's parents. However, as noted by our Supreme Court, "[t]he inherent power of the government to act through its agencies *928 and subdivisions . . . is subject to restraint in order to preserve and maintain a proper balance between the State's interest in protecting children from mistreatment and the right of parents to rear their children without undue government interference." T.R.P., 360 N.C. at 598, 636 S.E.2d at 794. Thus, in a proceeding implicating a fundamental right, due process demands that DSS abide by the statutory provisions established by our General Assembly for a court to acquire subject matter jurisdiction over the matter. As with the requirement to verify the petition, the issuance of a summons to each of the parties named in the statute "is a minimally burdensome limitation on government action[.]" Id., 636 S.E.2d at 795. If, in some instances, the requirement is overly burdensome, then DSS may elect to file a motion rather than a petition, thereby avoiding the necessity of issuing a summons to the juvenile.
In the instant case, because we vacate the trial court's order terminating Respondent-father's parental rights for lack of subject matter jurisdiction, "[t]he legal status of the juvenile and the custodial rights of the parties shall revert to the status they were before the juvenile petition was filed[.]" N.C. Gen.Stat. § 7B-201. We note that DSS is then free to file a motion or a new petition to terminate Respondent-father's parental rights to S.F., with the statutory requirements attendant to whichever means DSS elects to employ.
Vacated.
Judges McCULLOUGH and BRYANT concur.
NOTES
[1] N.C. Gen.Stat. § 7B-1106(a) (2005).