IN RE: A.R.S. and C.T.S.
No. COA08-1324
Court of Appeals of North Carolina
Filed February 17, 2009
This case not for publication
Marvin Sparrow, for petitioner-appellee Rutherford County Department of Social Services.
Thomas B. Kakassy, for respondent-appellant.
Pamela Newell Williams, for guardian ad litem.
CALABRIA, Judge.
Respondent-father ("respondent") appeals from an order terminating his parental rights to A.R.S. and C.T.S. ("the juveniles"). We affirm.

I. Facts
The Rutherford County Department of Social Services ("DSS") became involved with respondent's family in 2002. Since that time, DSS has substantiated multiple claims of neglect. In addition, there were several incidents of domestic violence between respondent and the juveniles' mother.
On 23 January 2006, DSS filed petitions alleging that A.R.S. and C.T.S. were neglected and dependent juveniles. DSS alleged that it had received an emergency phone call from the juveniles' uncle stating that he was no longer willing to care for the juveniles. The parents voluntarily placed the juveniles with the uncle due to domestic violence between the parents. The uncle claimed he had received a threatening phone call from an unknown man who stated that "he planned to come and shoot into the house and to shoot everyone in the house." The uncle stated that he could clearly hear the juveniles' mother in the background during the threatening phone call. The uncle demanded the juveniles be removed from his home because he feared for his safety, their safety, and the safety of his wife and their unborn child.
DSS further alleged that "[t]he parents continue to have behaviors that prevent the children from returning home to them." DSS stated that the mother had violated a domestic violence protective order, and respondent had failed to complete any of his case plan goals. DSS asserted that the "issues that brought the family to the attention of DSS have not stopped and continue to place the children at risk for harm." DSS stated no other appropriate relative or kinship placement for the children could be found. Furthermore, due to the severity of the threats, DSS felt it necessary to take temporary non-secure custody of the children and place them in foster care. On 8 March 2006, the juveniles were adjudicated neglected by stipulation of the parties and custody was continued with DSS.
On 29 November 2007, DSS filed a "Petition & Motion For Termination of Parental Rights." DSS alleged that the juveniles had remained in foster care or placement outside the home for more than twelve months without respondent making reasonable progress to correct the circumstances which led to the juveniles being placed in DSS custody. DSS further asserted that respondent had "made almost no efforts to comply with the requests of the Court or DSS to have the child returned to the respondent's custody." Thus, DSS alleged that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate respondent's parental rights. Additionally, DSS alleged that the juveniles had been placed in the custody of DSS for a continuous period of six months immediately preceding the filing of the petition and respondent had failed to pay a reasonable portion of the cost of care for the juveniles although physically and financially able to do so, pursuant to N.C. Gen. Stat. § 7B-1111(a)(3).
The matter came on for hearing on 26 June 2008. Respondent did not appear. On 1 July 2008, the trial court entered an order terminating respondent's parental rights. However, due to questions concerning whether respondent received adequate notice of the hearing, pursuant to a consent order, the order terminating respondent's parental rights was set aside and respondent was granted a new trial.
A new hearing was held before Chief District Judge C. Randy Pool ("Judge Pool") on 19 August 2008. Respondent asked Judge Pool to recuse himself from the hearing because at an unrelated criminal proceeding before the same judge, respondent had been held in contempt of court for calling the judge a bad name. Judge Pool denied the motion. The trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) and (3) to terminate respondent's parental rights. The court further concluded that it was in the juveniles' best interests that respondent's parental rights be terminated. Respondent appeals.

III. Analysis

A. Denial of motion for recusal
On appeal, respondent argues that the trial court erred by refusing to grant his motion for recusal. This Court has stated:
When a party requests such a recusal by the trial court, the party must demonstrate objectively that grounds for disqualification actually exist. The requesting party has the burden of showing through substantial evidence that the judge has such a personal bias, prejudice or interest that he would be unable to rule impartially. If there is sufficient force to the allegations contained in a recusal motion to proceed to find facts, or if a reasonable man knowing all of the circumstances would have doubts about the judge's ability to rule on the motion to recuse in an impartial manner, the trial judge should either recuse himself or refer the recusal motion to another judge.
In re Faircloth, 153 N.C. App. 565, 570, 571 S.E.2d 65, 69 (2002) (citation and internal quotation marks omitted). Furthermore, "[t]he standard to be applied when a [party] makes a motion that a judge be recused places the burden on the party moving for disqualification to demonstrate objectively that the grounds for disqualification actually exist." In re Nakell, 104 N.C. App. 638, 647, 411 S.E.2d 159, 164 (1991) (citation and internal quotation marks omitted).
In the instant case, there is nothing in the record to suggest that Judge Pool acted with any bias towards respondent, or that he could not act impartially in the matter. At the beginning of the termination hearing, respondent asked Judge Pool to recuse himself. Respondent stated that he had previously appeared before Judge Pool in an unrelated criminal hearing and directed "inappropriate remarks" towards Judge Pool. Judge Pool had found respondent in contempt, fined him, and sent him to jail. Respondent believed that Judge Pool might still have some bias or prejudice against him due to the remarks. In response, Judge Pool stated that "I honestly don't remember it." Respondent then proceeded to provide further details regarding the remarks, stating that he called Judge Pool a name that "starts with a F and, uh, the second word is A and it ends with E." However, Judge Pool could only admit to a "vague recollection" of the incident. Judge Pool stated that "if the Court were to recuse itself because one of the parties called the judge a particular bad name then I wouldn't have very much work to do most likely. Uh, I appreciate you bringing that to my attention. I can, I think, be fair and impartial." Accordingly, Judge Pool denied the motion. Respondent contends that "the provocative nature of [his] conduct in this proceeding and others was substantial" and thus he had good reason for the perceived "feelings of prejudice against him."
We disagree. After careful consideration of respondent's arguments, we conclude that respondent has not sustained his burden that grounds for disqualification of Judge Pool exist. Accordingly, we hold that the trial court did not err by denying the motion for recusal.

B. Validity of "petition and motion" filed by DSS
Respondent next argues that the "petition and motion" filed by DSS is fatally defective. Respondent asserts that there is no statutory authority for the filing of a "petition and motion." Moreover, respondent contends that the necessary birth certificates relevant to each petition were not attached. We disagree.
In accordance with the Juvenile Code, there are:
two means by which proceedings to terminate an individual's parental rights may be initiated: (1) by filing a petition to initiate a new action concerning the juvenile; or (2) in a pending child abuse, neglect, or dependency proceeding in which the district court is already exercising jurisdiction over the juvenile and parent, by filing a motion to terminate pursuant to N.C. Gen. Stat. § 7B-1102.
In re S.F., ___ N.C. App. ___, ___, 660 S.E.2d 924, 927 (2008). Here, the pleading filed by DSS was captioned "Petition and Motion." We conclude that the pleading was a properly filed petition, and not a motion in the cause.
Upon the filing of a termination petition, N.C. Gen. Stat. § 7B-1106(a) mandates that "the court shall cause a summons to be issued." N.C. Gen. Stat. § 7B-1106(a) (2007). On the other hand,
[w]hen a motion is filed, as opposed to a petition, N.C. Gen. Stat. § 7B-1106.1(a) provides that the movant `shall prepare a notice' directed to the parents of the juvenile, any guardian of the juvenile's person, the custodian of the juvenile, the county department of social services charged with the juvenile's placement, the juvenile's guardian ad litem, and the juvenile (if 12 years of age or older at the time the motion is filed).
In re C.S.B., ___ N.C. App. ___, ___, 669 S.E.2d 15, 16 (2008). Here, upon filing of the petition, summonses were issued. Had DSS filed a motion to terminate in the ongoing neglect case as provided by N.C. Gen. Stat. § 7B-1102, the issuance of summons would not have been required. There is no indication in the record that DSS intended the petition to be a motion in the cause. We further note that the trial court treated the pleading as a petition to terminate parental rights. Thus, it appears that the inclusion of the term "motion" in the caption was a mere lapsus linguae.
We further determine that DSS's failure to attach the correct birth certificate to each petition did not deprive the trial court of subject matter jurisdiction. This Court has held that, "absent a showing of prejudice, failure to [attach a copy of the custody order in compliance] with N.C. Gen. Stat. § 7B-1104(5) does not deprive the trial court of subject matter jurisdiction." In re T.M., 182 N.C. App. 566, 571, 643 S.E.2d 471, 475 (citations omitted), aff'd, 361 N.C. 683, 651 S.E.2d 884 (2007). Similarly, we conclude that a respondent is required to demonstrate that the failure to comply with N.C. Gen. Stat. § 7B-1104(1) caused prejudice. In the case sub judice, we hold that respondent has failed to demonstrate that such prejudice exists. Although DSS switched the birth certificates and thus attached the wrong birth certificate to its respective petition, the two petitions were jointly filed and the cases were consolidated. Thus, all the information required by N.C. Gen. Stat. § 7B-1104(1) was contained within the two petitions. Moreover, respondent never raised any objection concerning this error, and no confusion regarding the birth certificates is apparent in the record. Accordingly, we conclude that there was no reversible error.

C. Termination of respondent's parental rights
Finally, we consider whether the trial court erred in concluding that it was in the best interests of the juveniles to terminate respondent's parental rights.
After careful review of the record, briefs and contentions of the parties, we affirm. "The trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the [juvenile's] best interests." In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001) (citations omitted). Factors to consider in determining the juvenile's best interests include: (1) the age of the juvenile; (2) the likelihood of adoption; (3) the impact on the accomplishment of the permanent plan; (4) the bond between the juvenile and the parent; (5) the relationship between the juvenile and a proposed adoptive parent or other permanent placement; and (6) any other relevant consideration. N.C. Gen. Stat. § 7B-1110(a) (2007). The court is to take "[a]ction which is in the best interests of the juvenile [when] the interests of the juvenile and those of the juvenile's parents or other persons are in conflict." N.C. Gen. Stat. § 7B-1100(3)(2007). As a discretionary decision, the trial court's disposition order will not be disturbed unless it could not have been the product of reasoning. In re J.B., 172 N.C. App. 747, 751, 616 S.E.2d 385, 387, aff'd, 360 N.C. 165, 622 S.E.2d 495 (2005). In the instant case, the trial court's detailed findings of fact reveal that the trial court considered the factors required by N.C. Gen. Stat. § 7B-1110(a). The trial court made specific findings referencing the birth date of each of the juveniles. Additionally, the trial court found in each order that:
1. [The juvenile] is doing well in his foster home placement. He has not expressed a desire to visit or live with his parents.
2. Respondent [] visited with his children during the first few months that they were in foster care. However, he thereafter ceased to visit them regularly and had not visited with them for almost a year at the time the court suspended visitation and then relieved DSS of the duty to seek reunification.
3. Nothing indicates any change in the pattern of domestic violence which has been a part of respondent['s] [] life with any domestic partner. If the children were returned to [respondent], it is highly likely that they would be once again exposed to domestic violence in the home.
4. The minor child is in need of a stable home, free of strife and violence, and of a permanent plan of care at the earliest possible age, which can be accomplished only by severing the relationship with respondent and terminating respondent's parental rights.
The court then determined that termination was in the juveniles' best interests. Based on the findings of fact made by the trial court, we can discern no abuse of discretion. Accordingly, we affirm.
Affirmed.
Judges HUNTER, Robert C. and BRYANT concur.
Report per Rule 30(e).