682 S.E.2d 712 (2009)
In re S.F.
No. COA09-426.
Court of Appeals of North Carolina.
August 4, 2009.
*714 Feagan Law Firm, PLLC, by Phillip R. Feagan, Columbus, for petitioner-appellee, Polk County Department of Social Services.
Pamela Newell Williams, for the Guardian ad Litem.
Peter Wood, for respondent-appellant.
WYNN, Judge.
In this appeal, Respondent-Father argues the trial court erred by terminating his parental rights to minor child S.F. Because clear and convincing evidence supports the trial court's findings of fact, which in turn support grounds to terminate Respondent-Father's parental rights, we affirm.
On 20 August 2003, the Polk County Department of Social Services (DSS) filed a juvenile petition alleging that S.F. had severe bruising all over her body, and that S.F. told hospital personnel that her mother's boyfriend caused the bruising. DSS took nonsecure custody of S.F. and custody was continued until the adjudication hearing pursuant to the consent of S.F.'s mother. In October 2003, the trial court adjudicated S.F. an abused, neglected, and dependent juvenile based upon her being physically abused by her mother's boyfriend while in her mother's home.
S.F. was initially placed in a foster home, but after Respondent-Father made substantial gains toward reunification, the trial court placed S.F. with Respondent-Father in April 2004. However, following a permanency planning hearing in October 2004, the trial court removed S.F. from Respondent-Father's home based upon his positive tests for illegal drugs, and having been charged with drug and weapon offenses. The trial court placed S.F. with her paternal grandparents and allowed visitation.
In April 2005, the trial court awarded guardianship of S.F. to the paternal grandparents and ceased reunification efforts with Respondent-Father and S.F.'s mother. Upon learning that the paternal grandmother had allowed S.F. to spend the night at Respondent-Father's home where he and his girlfriend abused drugs, DSS filed a motion for review. In September 2005, the trial court terminated the paternal grandparents' guardianship of S.F. and returned custody of S.F. to DSS.
The paternal grandparents appealed the termination of their guardianship, and Respondent-Father appealed the cessation of reunification efforts by DSS. Meanwhile, S.F.'s mother relinquished her parental rights to S.F., who was placed with a family that adopted S.F.'s half-sister. After holding a permanency planning hearing on 24 October 2006, the trial court concluded that DSS should pursue termination of Respondent-Father's parental rights pending the outcome of the appeal by Respondent-Father and S.F.'s paternal grandparents. By an unpublished opinion filed 2 January 2007, this Court affirmed the trial court's order terminating guardianship and ceasing reunification efforts. In re S.F., 181 N.C.App. 149, 639 S.E.2d 454 (2007) (unpublished).
On 23 May 2007, DSS filed a petition to terminate Respondent-Father's parental rights and, on 21 November 2007, the trial court terminated Respondent-Father's parental rights. Respondent-Father appealed to this Court. By opinion filed 3 June 2008, this Court vacated the trial court's order for lack of subject matter jurisdiction. In re S.F., 190 N.C.App. 779, 660 S.E.2d 924 (2008).
*715 On 14 August 2008, DSS filed a motion to terminate Respondent-Father's parental rights. The trial court conducted a hearing on the motion on 22 December 2008. Following the hearing, the trial court orally announced the termination of Respondent-Father's parental rights in open court. Respondent-Father filed notice of appeal from that order on 31 December 2008. However, the trial court's written order was not filed until 4 February 2009.[1] In its order, the trial court terminated Respondent-Father's parental rights based upon neglect (N.C. Gen.Stat. § 7B-1111(a)(1)) and willfully leaving the child in foster care without making reasonable progress under the circumstances (N.C. Gen.Stat. § 7B-1111(a)(2)). The trial court also concluded that it was in the best interest of the child to terminate Respondent-Father's parental rights.
All parties to this appeal filed briefs in this Court. Respondent-Father filed a brief on 16 April 2009, the Guardian ad Litem for S.F. filed a brief on 5 May 2009, and DSS filed a brief on 18 May 2009. Respondent-Father also filed a petition for writ of certiorari on 13 May 2009. However, the Guardian ad Litem and DSS filed a joint motion to dismiss this appeal on 28 May 2009, alleging that this Court lacks jurisdiction because Respondent-Father's Notice of Appeal was untimely and included no certificate of service.
Thus, we first consider our jurisdiction to hear this appeal. Regarding the timeliness of Respondent-Father's notice of appeal, this Court has squarely held that notice of appeal given within thirty days after rendering of judgment in open court, but before entry of judgment, is timely. Darcy v. Osborne, 101 N.C.App. 546, 548, 400 S.E.2d 95, 96 (1991). Therefore, Respondent-Father's notice of appeal in this case was timely.
The Guardian ad Litem and DSS also contend that this Court lacks jurisdiction because the notice of appeal did not include a certificate of service. However, our case law establishes that the failure to show proof of service affects personal jurisdiction and does not deprive this Court of subject-matter jurisdiction. Blevins v. Town of West Jefferson, 182 N.C.App. 675, 682-83, 643 S.E.2d 465, 469-70 (Geer, J., dissenting), adopted per curiam, 361 N.C. 578, 653 S.E.2d 392 (2007); Hale v. Afro-American Arts Int'l, 110 N.C.App. 621, 625, 430 S.E.2d 457, 459-60 (Wynn, J., dissenting), adopted per curiam, 335 N.C. 231, 436 S.E.2d 588 (1993). But cf. In re C.T. & B.T., 182 N.C.App. 166, 641 S.E.2d 414, aff'd per curiam, 361 N.C. 581, 650 S.E.2d 593 (2007) (dismissing appeal where the appellant failed to attach certificate of service to notice of appeal in record on appeal). Because this Court has subject-matter jurisdiction over this appeal, and the record shows that the Guardian ad Litem and DSS had actual notice of this appeal, we exercise our discretion and allow Respondent-Father's petition for writ of certiorari to address the merits of his contentions. See N.C.R.App. 21.
On the merits of his appeal, Respondent-Father contends the trial court: (I) erred by concluding that grounds existed to terminate his parental rights; and (II) abused its discretion by concluding that terminating his parental rights was in S.F.'s best interests. We disagree with Respondent-Father's contentions.

I.
Termination of parental rights involves a two-stage process. In re Blackburn, 142 N.C.App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage, "the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111 exists." In re Anderson, 151 N.C.App. 94, 97, 564 S.E.2d 599, 602 (2002). "If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." Id. at 98, 564 S.E.2d at 602. The trial court's decision to *716 terminate parental rights is reviewed under an abuse of discretion standard. Id.
Parental rights may be terminated when "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen.Stat. § 7B-1111(a)(2) (2007). Willfulness does not imply fault on the part of the parent, but may be established "`when the respondent had the ability to show reasonable progress, but was unwilling to make the effort.'" In re O.C. & O.B., 171 N.C.App. 457, 465, 615 S.E.2d 391, 396 (quoting In re McMillon, 143 N.C.App. 402, 410, 546 S.E.2d 169, 175 (2001)), disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005). Even if a parent has made some efforts to regain custody, a trial court may still find that he or she willfully left the child in foster care under section 7B-1111(a)(2). See id.
Supporting its conclusion that Respondent-Father willfully left S.F. in foster care or placement outside the home for more than 12 months without showing reasonable progress to the satisfaction of the court, the trial court found in pertinent part:
14. The child was first placed in the custody of Polk County DSS on August 20, 2003, when a Non-Secure Custody Order was entered and continued until October 21, 2003, when an Adjudication Order of Abuse and Neglect was entered. The child remained in foster care until a trial placement began with the Respondent Father... by Order entered April 13, 2004. The child remained in the home of the Respondent Father until October 2004, when she was moved into the home of her paternal grandparents ... after Polk County DSS learned that the Respondent Father was charged with drug and weapon offenses and tested positive for controlled substances.
15. Guardianship of the child was given to the paternal grandparents by Order entered April 12, 2005. Said guardianship in the paternal grandparents was terminated by Order entered September 13, 2005, after said guardians allowed the child to be unsupervised in the presence of persons using illegally controlled substances, thereby neglecting their duties as guardian of the person of the juvenile. On December 21, 2005, the child was placed in her current foster care placement where she continues to reside.
...
19. On December 21, 2005, the child was placed in her current foster care placement which is where she continues to reside. The juvenile has remained in that foster care placement since said date, which placement has provided a safe and secure environment for the child and she is very bonded with her foster parents.
20. The Respondent Father has been a party to this proceeding since prior to the Adjudication in October 2003.
21. The Respondent Father has not visited, nor requested visits with[] his minor child since she re-entered foster care. He has not written or called to inquire about the child's status. In December 2005, Christmas presents, provided by the Respondent Father's mother, were delivered by the Respondent Father for the child to the DSS office; however, he did not inquire about the child.
22. Respondent Father has been convicted of various criminal offenses and was incarcerated in the North Carolina Department of Corrections until November 2008.
23. Respondent Father was convicted of felony possessions of Schedule II Methamphetamine on April 25, 2007, along with failure to appear upon the felony charges. The offense date of the possession charge was August 26, 2005.
24. Respondent Father was convicted of carrying a concealed weapon and several failures to appear on misdemeanor charges on January 24, 2007. The offense date of March 11, 2006.
25. From March 7, 2005 until July 11, 2005, during which time efforts were being made for reunification of the Respondent Father with his minor child, the Respondent Father had eleven (11) positive drug *717 screens for methamphetamine and marijuana.
26. Polk County DSS had no contact with the Respondent Father during his incarceration from April 23, 2007 to November 3, 2008. Further, the Respondent Father has made no contact with Polk County DSS since his release November 3, 2008.
27. Respondent Father was initially ordered to pay child support on or about October 24, 2003, in the amount of $56.00 per month pursuant to a Voluntary Support Agreement he entered into with the Polk County IV-D Child Support Agency. His payments thereto were at [ ] best sporadic, having been summoned back to court several times for non-payment. Since the child reentered foster care on September 13, 2005, the Respondent Father has made only one (1) payment in the amount of $100.00, on or about March 16, 2007, but was incarcerated prior to making any payment on the lump sum. Since his release from prison, the Respondent Father has not made any arrangements to support his child. His arrearage is $1,021.61, and he has neglected his child by not paying said child support obligation.
28. The cost of foster care for the child has been no less than $16,114.00. The Respondent Father failed or refused to pay a reasonable portion thereof although he had been gainfully employed, prior to his incarceration, and he had the ability to pay at least a portion of the same. Since Respondent Father's release from incarceration on November 5, 2008, he has been employed as a laborer with Russell's Guttering of Greenville, South Carolina, earning reportedly cash compensation of $1,000.00 or more and has still made no child support payments.
...
32. The minor child was moved from her foster home placement in April 2004 and placed in the home of the Respondent Father. The "Consent Order Upon Six Month and Permanency Planning Review" entered in this matter on April 13, 2004, now almost five years ago, gave the Respondent Father definable goals; he had the child in placement with him. He had made substantial gains toward reunification and had worked actively on his case plan. The plan was to make this reunification permanent, to get DSS out of the care picture completely. The father was fully in charge of his daughter then as the child was under his roof. He knew all this time that he had drug weaknesses and this was his chance to prove himself and continue to demonstrate an ability to parent his child. Yet, he relapsed and lost the child. If he had only done right then, we wouldn't be here now.
33. The minor child continued in placement with the father until October 2004 when he was charged with carrying a concealed weapon, felony drug charges, and tested positive for several controlled substances. Four years ago he was asked to aggressively address and comply with the correction of these issues. The child was placed in his custody, but because of his weaknesses, he willfully placed the child out of his home. By and large this could be said to be the end of this procedure. Both he and the mother slipped off the radar.
34. Reunification efforts were ceased and termination of parental rights proceedings began. The father and grandmother filed an appeal to the September 2005 Court Order terminating guardianship in November 2005. Their appeal was denied but the judgment was not filed in the Clerk's office until February 6, 2007, and the petition could not be heard until the appeal was final. This bought the father an additional 16 months of this child's life to demonstrate in the face of earlier orders to cease reunification [and] that he could be a nurturing parent. At this point we are trying to make a silk purse out to several things but he placed himself out of the run[ning] during the additional 16 months given him to show his ability to nurture the child.
35. Respondent Father has made one child support payment of $100.00. He has paid only 1/10th in child support what he has paid for traffic violations in order to get his license back, which he lost for various willful offenses. Respondent Father testified could not pay on his child *718 support obligation after his release from custody in November 2008 because he had to pay fines and costs to pursue the return of his drivers license and insurance upon his vehicle.
36. The Respondent Father was ordered to attend drug treatment in 2005 and did not participate [in] or complete that treatment.
37. During the time the Respondent Father was on probation during March and April 2007, despite attending some drug treatment during that time, he tested positive for Schedule VI-marijuana on four (4) drug screens and Respondent Father admitted his use to said controlled substance.
38. Since April 2007, and while the Respondent Father was incarcerated in the North Carolina Department of Corrections, he participated in NA & AA. He attended a couple of meetings then. By January 2008, the father's efforts ceased on NA/AA treatment. In the last eleven months there has been no addressing of his substantial substance abuse problems. These issues are ongoing, have existed for years and Respondent Father continues to not address his drug problems, except for the few minutes of his time spent at NA/AA, while he was in the Department of Corrections.
Although Respondent-Father assigns error to finding of fact thirty-eight, he did not specifically argue in his brief that this finding is unsupported by the evidence. Consequently, the court's findings of fact, including finding of fact thirty-eight, are presumed to be correct and supported by competent evidence. See In re P.M., 169 N.C.App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence"). We hold the above referenced unchallenged findings of fact support the trial court's conclusion that sufficient grounds exist to terminate Respondent-Father's parental rights to S.F. pursuant to N.C. Gen.Stat. § 7B-1111(a)(2).
We note that the trial court concluded that grounds existed pursuant to sections 7B-1111(a)(1) and (2) of the North Carolina General Statutes to terminate Respondent-Father's parental rights. Although Respondent-Father argues that the other ground under subsection (a)(1) is also not supported by the evidence, we need not address his argument. See In re Pierce, 67 N.C.App. 257, 261, 312 S.E.2d 900, 903 (1984) (a finding of one statutory ground is sufficient to support the termination of parental rights). To the extent that Respondent-Father assigned error to additional findings of fact made by the trial court, we need not address those assignments of error because we have concluded that the unchallenged findings support the conclusion that Respondent-Father willfully left S.F. in foster care for twelve months without making reasonable progress.

II.
Next, Respondent-Father contends the trial court abused its discretion in concluding that the termination of his parental rights was in S.F.'s best interests.
In determining whether terminating the parent's rights is in the juvenile's best interest, the court shall consider the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen.Stat. § 7B-1110 (2007).
Here, the trial court made the following findings to support the court's determination that it was in the bests interests of the child to terminate Respondent-Father's parental rights:
45. The child has been successful in adjusting to life in foster care and has established a very loving and secure relationship with her foster parents, having been in that placement since December 21, 2005. *719 She is also in placement with her half-sister who is twelve (12) years of age. The child is a good candidate for adoption by the foster parents.
46. The paternal grandmother, Barbara Bradley, whose guardianship of the minor child was terminated by the Court on September 13, 2005, last saw her minor grandchild in October 2005. There are no suitable relatives to provide care for this child at present.
47. The minor child was approximately 3 years old when she came into the custody of Polk County Department of Social Services. She is now 8 1/2 years old.
48. The minor child has remained in the same foster care home in South Carolina since her placement in September 2005. The foster care home is providing a safe and appropriate placement for the minor child and the foster parents wish to adopt the minor child. The foster care family previously adopted the half sister of this minor child.
49. The Court received testimony from the Foster Father Randy Grice which demonstrated that the minor child is doing well in her current foster care placement. She desires to be adopted by her foster care family and wishes to change her last name.
50. The Respondent Father has another child or children with their birth mothers located in Kentucky or Tennessee and with whom he has no contact or is otherwise not involved in those children's lives.
51. The best interests of the minor child require an Order of Termination of Parental Rights be entered as to the Respondent Father [ ] so that said child may be placed for adoption.
Again, Respondent-Father does not argue that these findings of fact are unsupported by the evidence. Based upon the trial court's unchallenged findings, we conclude that the trial court did not abuse its discretion by concluding that terminating Respondent-Father's parental rights was in the best interests of the child. Accordingly, this argument is without merit.
Affirmed.
Judges BRYANT and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] The Clerk of Polk County Superior Court entered an order on 13 February 2009 stating that counsel for Respondent-Father could refile the Notice of Appeal filed prior to the entry of the termination order. However, nothing in the record indicates that the notice of appeal was actually refiled.