STEPHENS, Judge.
 

 *57
 
 Respondent-father appeals from the district court's orders terminating his parental rights to A.L. ("Arianna").
 
 [1]
 
 After careful review, we affirm.
 

 Factual and Procedural Background
 

 In December 2011, the Hoke County Department of Social Services ("DSS") took newborn Arianna into nonsecure custody and filed a juvenile petition alleging that she was neglected and dependent. According to the petition, Arianna's mother had a long history of untreated substance abuse, and Arianna tested positive for marijuana and cocaine at birth. The petition also alleged that six previous children had been removed from the mother's custody and that she had relinquished her parental rights to five children. The identity of Arianna's father was unknown at the time.
 

 At the 17 February 2012 session of Juvenile Court, DSS voluntarily dismissed the petition after the mother relinquished her parental rights to Arianna. At the time, the identity of Arianna's father was still unknown. Therefore, Arianna remained in DSS custody. The district court subsequently entered a dismissal order on 20 September 2012.
 

 A placement review hearing was conducted on 7 September 2012, by which time the mother had identified Respondent-father as Arianna's putative father and DNA testing had confirmed Respondent-father's paternity. The district court entered a corresponding review order on 5 November 2012. In the order, the district court found that Respondent-father had a DSS history involving his four children with "Nancy."
 
 [2]
 
 The court found that Respondent-father's relationship with Nancy was the main impediment to Respondent-father obtaining custody of Arianna because the couple had a long history of domestic violence. Despite a no-contact order, Respondent-father was unable to keep Nancy out of his home. Therefore, the district court maintained custody of Arianna with DSS, but nonetheless implemented a permanent plan of reunification of Arianna with Respondent-father.
 

 The district court subsequently changed Arianna's permanent plan to adoption. On 15 May 2014, DSS filed a petition to terminate Respondent-father's parental rights to Arianna, alleging the following grounds for termination: (1) failure to make reasonable progress toward correcting
 
 *58
 
 the conditions that led to removal; (2) willful failure to pay a reasonable portion of the cost of care for Arianna; (3) failure to legitimate Arianna; (4) dependency; and (5) willful abandonment.
 
 See
 
 N.C. Gen.Stat. § 7B-1111(a)(2), (3), (5)-(7) (2013).
 

 Following a hearing, the district court entered an order on 23 February 2015 terminating Respondent-father's parental rights based upon the following grounds: (1) failure to make reasonable progress toward correcting the conditions that led to the placement of Arianna in DSS custody; (2) willful failure to pay a reasonable portion of the cost of care for Arianna; and (3) willful abandonment.
 
 [3]
 
 In a separate disposition order entered
 
 *859
 
 the same day, the district court concluded that it was in Arianna's best interest to terminate Respondent-father's parental rights. From both orders, Respondent-father appeals.
 

 Discussion
 

 I. The district court's jurisdiction to enter certain custody review orders
 

 Respondent-father first argues that the district court was divested of jurisdiction on 20 September 2012 when the court entered its order dismissing the original juvenile petition and that the court did not re-acquire jurisdiction until DSS filed its petition to terminate parental rights on 15 May 2014. Respondent-father further contends that because the district court lacked jurisdiction during this time, any custody review orders entered from 20 September 2012 to 15 May 2014 were void. We agree.
 

 "A ... court's subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified petition."
 
 In re T.R.P.,
 

 360 N.C. 588
 
 , 593,
 
 636 S.E.2d 787
 
 , 792 (2006). Following the dismissal of an action, however, the
 
 *59
 
 district court no longer has jurisdiction.
 
 See
 

 In re O.S.,
 

 175 N.C.App. 745
 
 , 749,
 
 625 S.E.2d 606
 
 , 609 (2006) ("DSS then dismissed its juvenile petition. Without the juvenile petition, the district court no longer had any jurisdiction over the case."). In this case, DSS voluntarily dismissed the juvenile petition after the mother relinquished her parental rights, and the district court thereafter entered an order dismissing the matter, concluding that the petition was mooted by the relinquishment. Because the district court no longer had subject matter jurisdiction over the case, its subsequent custody review orders were void.
 
 [4]
 

 See
 

 In re T.R.P.,
 

 360 N.C. at 589
 
 ,
 
 636 S.E.2d at 789-90
 
 (concluding that because the district court lacked subject matter jurisdiction, the review hearing order was void
 
 ab initio
 
 ).
 

 Nevertheless, Respondent-father concedes that, even if the district court did not have jurisdiction to enter any custody review orders after the juvenile action was dismissed, it re-acquired jurisdiction when DSS filed the petition to terminate his parental rights on 15 May 2014.
 

 The Juvenile Code provides
 

 two means by which proceedings to terminate an individual's parental rights may be initiated: (1) by filing a petition to initiate a new action concerning the juvenile; or (2) in a pending child abuse, neglect, or dependency proceeding in which the district court is already exercising jurisdiction over the juvenile and parent, by filing a motion to terminate pursuant to N.C. Gen.Stat. § 7B-1102.
 

 In re S.F.,
 

 190 N.C.App. 779
 
 , 783,
 
 660 S.E.2d 924
 
 , 927 (2008). "[W]hen a
 
 petition
 
 to terminate is filed, the petition initiates an entirely new action before the court, rather than simply continuing a long process begun with the petition alleging abuse, neglect, or dependency."
 

 Id.
 

 (emphasis in original). Indeed, when a petition to terminate is filed, N.C. Gen.Stat. § 7B-1106 requires the issuance of a new summons, and the summons is the means by which the district court establishes subject matter
 
 *60
 
 jurisdiction over the matter.
 
 Id.
 
 at 783-84,
 
 660 S.E.2d at 927-28
 
 . By contrast, a motion to terminate in an ongoing
 
 *860
 
 juvenile case requires only notice of hearing, as the district court maintains jurisdiction "because of the ongoing proceeding [.]"
 
 Id.
 
 at 783,
 
 660 S.E.2d at 927
 
 .
 

 In the case at bar, DSS initiated a new action by issuing a new summons and filing a petition to terminate Respondent-father's parental rights. Nevertheless, in order for the district court to obtain subject matter jurisdiction, the petitioner must also have standing to file the petition.
 
 See
 

 In re E.X.J.,
 

 191 N.C.App. 34
 
 , 39,
 
 662 S.E.2d 24
 
 , 27 (2008) ("If DSS does not lawfully have custody of the children, then it lacks standing to file a petition or motion to terminate parental rights, and the [district] court, as a result, lacks subject matter jurisdiction.") (citation omitted),
 
 affirmed per curiam,
 

 363 N.C. 9
 
 ,
 
 672 S.E.2d 19
 
 (2009). Standing to file a termination petition is governed by N.C. Gen.Stat. § 7B-1103(a), which provides, in pertinent part:
 

 A petition or motion to terminate the parental rights of either or both parents to his, her, or their minor juvenile may only be filed by one or more of the following:
 

 ....
 

 (4) Any county department of social services, consolidated county human services agency, or licensed child-placing agency to which the juvenile has been surrendered for adoption by one of the parents or by the guardian of the person of the juvenile, pursuant to [section] 48-3-701.
 

 N.C. Gen.Stat. § 7B-1103(a)(4) (2013). In this case, Arianna's mother relinquished her parental rights to Arianna and surrendered her for adoption.
 
 See
 
 N.C. Gen.Stat. § 48-3-701 (2013). By virtue of the mother's relinquishment, DSS had standing to file the termination petition pursuant to section 7B-1103(a)(4).
 

 Thus, we hold that the district court re-acquired subject matter jurisdiction over this matter because (1) DSS initiated a new action by issuing a new summons and filing a termination petition, and (2) DSS had standing to file the petition due to the mother's relinquishment of custody of Arianna to DSS.
 

 II. Grounds for termination of Respondent-father's parental rights
 

 Next, Respondent-father challenges the district court's determination that grounds existed to support the termination of his parental
 
 *61
 
 rights. Specifically, he argues that DSS did not produce significant evidence at the termination hearing, independent of the void review orders discussed
 
 supra,
 
 to support its findings of fact and conclusions of law. We conclude that clear, cogent, and convincing evidence properly before the district court supported those findings of fact necessary to support the court's conclusion of law that at least one ground existed to terminate Respondent-father's parental rights to Arianna.
 

 Pursuant to section 7B-1111(a), a district court may terminate parental rights upon a finding of one of eleven enumerated grounds. If we determine that the findings of fact support one ground for termination, we need not review the other challenged grounds.
 
 Humphrey,
 
 156 N.C.App. at 540, 577 S.E.2d at 426. In making our determination, we consider "whether the [district] court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur...."
 
 In re Oghenekevebe,
 

 123 N.C.App. 434
 
 , 435-36,
 
 473 S.E.2d 393
 
 , 395 (1996) (citation omitted).
 

 After reviewing the record, we conclude that the district court's findings of fact are sufficient to support the ground of failure to pay a reasonable portion of the cost of care for the juvenile. The pertinent statute provides:
 

 The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
 

 N.C. Gen.Stat. § 7B-1111(a)(3). "In determining what constitutes a 'reasonable portion'
 

 *861
 
 of the cost of care for a child, the parent's ability to pay is the controlling characteristic."
 
 In re Clark,
 

 151 N.C.App. 286
 
 , 288,
 
 565 S.E.2d 245
 
 , 247 (citation omitted),
 
 disc. review denied,
 

 356 N.C. 302
 
 ,
 
 570 S.E.2d 501
 
 (2002). "[N]onpayment constitutes a failure to pay a reasonable portion if and only if [the] respondent [is] able to pay some amount greater than zero."
 
 Id.
 
 at 289,
 
 565 S.E.2d at 247
 
 (citation and internal quotation marks omitted).
 

 The district court made the following findings of fact to support this ground for termination:
 

 *62
 
 32. In the past three (3) years, ... Respondent[-f]ather has worked as a mechanic and truck driver.
 

 33. Respondent[-f]ather has paid two (2) child support payments which total aggregate in [sic] Seven Hundred and Fifty Dollars and 00/100 ($750.00) during the three (3) years of the juvenile's life.
 

 34. Child care costs for the juvenile are nearly Five Hundred Dollars 00/100 ($500.00) per month....
 

 35. Respondent[-f]ather has had a minimum of at least Six Hundred Dollars 00/100 ($600.00) a month of disposable income and failed to use the disposable income for the payment of a reasonable portion of cost for the juvenile.
 

 36. Respondent[-f]ather is able to work and is gainfully employed during relevant time periods of this litigation, as well as time periods of the [underlying neglect and dependency proceeding].
 

 37. Respondent[-f]ather for a continuous period of Six (6) months next [preceding] the filing of this Petition has willfully failed for such a period to pay a reasonable portion of the cost of care for the juvenile, although he is physically and financially able to do so.
 

 Respondent-father has failed to specifically challenge any of these findings of fact as lacking evidentiary support. Consequently, they are presumed to be supported by competent evidence and are binding on appeal.
 
 See
 

 In re M.D.,
 

 200 N.C.App. 35
 
 , 43,
 
 682 S.E.2d 780
 
 , 785 (2009) (citations omitted). Based on these findings, the district court concluded that Arianna was placed in the custody of DSS and that Respondent-father, for a continuous period of six months next preceding the filing of the petition, willfully failed to pay a reasonable portion of the cost of care for Arianna despite being physically and financially able to do so.
 

 Respondent-father argues that the district court's conclusion is erroneous for a number of reasons. First, he argues that this ground requires the child to be placed in DSS custody, and that there is no legal order placing Arianna in DSS custody because the district court's review orders were rendered void due to the court's gap in jurisdiction.
 
 [5]
 

 *63
 
 While we again agree that the district court did not have jurisdiction over this matter between the date of the dismissal order and the date of the termination petition, we disagree that DSS was divested of custody. Respondent-father's argument is misplaced. DSS was given custody of Arianna by virtue of the mother's relinquishment, which was authorized by N.C. Gen.Stat. § 48-3-701. The relinquishment specifically gave custody of Arianna to DSS-and this provision was required by statute.
 
 See
 
 N.C. Gen.Stat. § 48-3-703 (2013). The relinquishment procedures arising under Chapter 48 of our General Statutes provided an alternative avenue for DSS to lawfully obtain custody of Arianna and were not affected by the district court's gap in jurisdiction. Therefore, Arianna was in fact a "juvenile placed in the custody of a county department of social services...."
 
 See
 
 N.C. Gen.Stat. § 7B-1111(a)(3).
 

 Respondent-father does not appear to challenge the district court's finding that he
 
 *862
 
 failed to pay a reasonable portion of the cost of care for the juvenile despite being able to do so. Nonetheless, we hold that this finding is supported by the clear, cogent, and convincing evidence of record. First, Respondent-father's ability to pay was established by the child support enforcement orders.
 
 See
 

 In re Becker,
 

 111 N.C.App. 85
 
 , 94,
 
 431 S.E.2d 820
 
 , 826 (1993) (holding that since the respondent-father had "entered into a voluntary support agreement to pay $150.00 per month, DSS did not need to provide detailed evidence of his ability to pay support during the relevant time period"). The child support enforcement orders arose in a separate action derived from a separate statutory framework-Chapter 50 of our General Statutes.
 

 Additionally, the enforcement action had an entirely different file number (12 CVD 315) and was presided over by a different judge. Therefore, unlike the custody review orders, the child support enforcement orders were not rendered void by the district court's gap in jurisdiction.
 

 In addition, the district court made findings establishing that Respondent-father failed to pay a reasonable amount of child support even though he had the ability to do so. Despite being subject to a child support order, Respondent-father made only two payments over the course of this case, and only one during the relevant time period. Moreover, Respondent-father signed a memorandum of understanding on two occasions acknowledging that he had the ability to pay. Lastly, we find it telling that Respondent-father made the two payments solely
 
 *64
 
 in connection with contempt proceedings against him-it appears that he never attempted to make regular monthly payments in the agreed-upon amount, and he remained in arrears after both payments. Thus, we conclude that the district court did not err in terminating Respondent-father's parental rights pursuant to section 7B-1111(a)(3), and we accordingly affirm the district court's orders.
 

 III. Previous adjudication of Arianna as a dependent juvenile
 

 Finally, we address Respondent-father's argument that the district court erred by finding as fact that Arianna had previously been adjudicated dependent. In finding of fact number 42, the district court found that "[t]he juvenile has been found to be dependent as defined by [section] 7B-101(15)." Respondent-father argues that this finding is unsupported by the evidence because the original juvenile petition was dismissed.
 

 We agree that this finding is error. It is undisputed that the district court dismissed the original juvenile petition and never conducted an adjudication of the petition. Consequently, the district court's finding that Arianna was adjudicated dependent is devoid of evidentiary support. However, this error is not prejudicial because the district court properly terminated Respondent-father's parental rights on another ground, which we have affirmed
 
 supra.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge TYSON concur.
 

 [1]
 

 A stipulated pseudonym is used to protect the identity of the juvenile and for ease of reading.
 
 See
 
 N.C.R.App. P. 3.1(b).
 

 [2]
 

 "Nancy" is a pseudonym.
 

 [3]
 

 In reviewing the record, we have found two discrepancies between the filed termination order and the court's oral rendition of its decision at the hearing. At the hearing, the district court also found dependency as a ground for termination, but that ground is absent from the order. Additionally, despite the court's finding of willful abandonment in the termination order, DSS chose not to pursue this ground at the hearing. Further, the court did not find willful abandonment as a ground for termination in its oral rendition at the hearing. However, we conclude that any error on the part of the district court with respect to these discrepancies is not prejudicial. As explained in the sections that follow, the district court was justified in terminating Respondent-father's parental rights on a different ground. If this Court determines that the findings of fact support one ground for termination, we need not review the other challenged grounds,
 
 see
 

 In re Humphrey,
 

 156 N.C.App. 533
 
 , 540,
 
 577 S.E.2d 421
 
 , 426 (2003), because only one statutory ground is necessary to support the termination of parental rights.
 
 See
 

 In re Pierce,
 

 67 N.C.App. 257
 
 , 261,
 
 312 S.E.2d 900
 
 , 903 (1984).
 

 [4]
 

 In reaching this result, we reject the contention by DSS and the Guardian ad Litem ("GAL") that the district court never lost jurisdiction over the matter because DSS became Arianna's custodian when the mother relinquished her parental rights. It appears that DSS and the GAL conflate jurisdiction and custody. While it is true that DSS acquired legal custody of Arianna by virtue of the relinquishment, it does not necessarily follow that the relinquishment gave the district court jurisdiction over an action that had been dismissed. Nonetheless, as we explain below, while there was a gap in jurisdiction, the district court properly re-acquired subject matter jurisdiction when DSS filed the termination of parental rights petition.
 

 [5]
 

 In a separate but related argument, Respondent-father contends that the district court erred by finding that DSS had custody of Arianna pursuant to the mother's relinquishment. He contends that DSS can only gain temporary custody through nonsecure custody orders, and that those orders were "dissolved" when the original juvenile petition was dismissed. We have already rejected this argument
 
 supra
 
 and do not further address it here.