HUNTER, JR., ROBERT N., Judge.
 

 *294
 
 Defendant appeals from judgments entered 2 April 2013 by Judges L. Todd Burke and V. Bradford Long after a jury convicted him of financial card theft, possession of stolen property, and the status of being an habitual felon. Our review of the indictment reveals the indictment did not contain all of the elements of possession of stolen property. Therefore, we vacate the judgment as it pertains to Defendant's conviction for possession of stolen property. Defendant contends the trial court erred in denying his motion to dismiss the charges of financial card theft because the State failed to present sufficient evidence of those offenses. Defendant also argues he was denied the effective assistance of counsel, though he did not file a motion for appropriate relief with the trial court. We hold the trial court did not err in part, but we vacate the conviction of possession of
 
 *462
 
 stolen goods, and dismiss the ineffective assistance of counsel claims without prejudice for Defendant to file a motion for appropriate relief with the trial court.
 

 I. Factual and Procedural Background
 

 On 3 October 2011, a grand jury charged Defendant with breaking and entering a motor vehicle, financial card theft, and possession of stolen property. For the charge of possession of stolen property, the indictment reads as follows:
 

 And the jurors for the State upon their oath present that on or about the date(s) of offense shown and in the county named above the defendant named above unlawfully,
 
 *295
 
 willfully, and feloniously did possess one handbag containing personal items, one wallet, one Wachovia debit/credit card, one social security card, one check book, and $30.00 in United States currency.
 

 Defendant's case came for a jury trial 2 April 2013 in superior court. The State's evidence tended to show the following.
 

 Sabrina McMasters, a service manager for Wells Fargo, testified as follows: On 12 May 2011, while taking her daughter to daycare in Trinity, North Carolina, from her home in Greensboro, it began to rain. At approximately 8 a.m., she parked in a small parking lot in front of the building. Because of the rain, she rushed to get her daughter inside of the daycare center which took five to eight minutes.
 

 On her return, the glove box was open and her pocketbook, containing her driver's license, checkbook, social security card, house keys, pictures of her daughter, and a debit card, was missing. McMasters ran into the daycare office and called the police. Approximately ten minutes later, Officer Andrews arrived.
 

 Billy Andrews, a police officer for the City of Archdale, responded to a larceny call at Trendel Children's Center. When he arrived at 8:20 a.m., he saw McMasters standing next to her vehicle, a white Dodge Durango, crying. McMasters told him her pocketbook, containing bank cards, two checkbooks, and three social security cards was stolen.
 

 After this conversation, McMasters called her bank to report her debit card had been stolen. The bank's records showed recent purchases on her card at a gas station, The Pantry, and Food Lion. McMasters drove to The Pantry, where she spoke with the owner, Andrew Lee. After she explained her circumstances, she searched around the store, but she did not find her pocketbook or any of its contents. She then drove to Food Lion, where she walked around the premises to search for her pocketbook. She found nothing.
 

 McMasters told Officer Andrews her debit card was used that morning. The bank reported someone swiped McMasters' debit card at Food Lion at 8:16 a.m. and subsequently at The Pantry around 8:34 a.m. to purchase gas and to make a cash withdrawal. Officer Andrews testified Suzie Sellers, a daycare employee, informed him she saw a white man in his forties that morning sitting across the street from the daycare and smoking a cigarette. No other daycare employees reported any unusual activity at or around the daycare that morning.
 

 *296
 
 Later that afternoon, David Jones, a sergeant in investigations with the City of Archdale, began investigating McMasters' file. His investigation revealed someone swiped McMasters' debit card at a Food Lion at 8:16 a.m. for $114. This Food Lion is located one-half mile from Defendant's home. At 8:34 a.m., the debit card was at The Pantry for $40.01 to buy gasoline. Someone then attempted to use the card inside the store to make a withdrawal from the ATM, but that withdrawal was unsuccessful.
 

 Detective Jones obtained a surveillance video from The Pantry dated 12 May 2011 and played a copy of the video for the jury. The video is not contained in the record on appeal. The next day, Detective Jones went to Defendant's house, and questioned him about these events. Defendant explained he was home alone that day, and had been home alone for two weeks due to a medical issue. Hanging on the banister just inside the front door of Defendant's townhome, Detective Jones saw a green baseball cap. He recognized the cap from the surveillance video from The Pantry. During this discussion, Detective Jones obtained a lottery ticket
 
 *463
 
 from the Defendant's person which was purchased at 10 a.m. on 13 May 2011, during the time which Defendant said he did not leave his home. Detective Jones did not attempt to obtain surveillance video from Food Lion because "Food Lion is one of the tougher businesses to get video from and to work with." He said it generally takes six months to one year to obtain video from Food Lion.
 

 Describing the video from The Pantry, Detective Jones explained Defendant placed two fruit drinks on the counter in front of Lee. In the video, Defendant attempted to pay. At that time, Lee and Defendant discussed tornado damage in Alabama and scratch off tickets. Defendant asked for a $100 gift card, but Lee refused because he would only accept cash. Lee told Defendant he needed to use the ATM. At that time, the time stamp on the video showed it was 8:34 a.m. Defendant walked away from the counter and out of the screen, presumably toward the ATM. Defendant left the store without returning to the counter to make a purchase.
 

 The State rested. At that time, Defendant moved to dismiss all charges because the State failed to meet its burden. The court denied Defendant's motion.
 

 Defendant testified on his own behalf. Defendant works part-time at Kohl's and Bitlocks and is a pastor at the Second Chance Community Mission. Defendant had prostate surgery 27 April 2011, and returned to the doctor to have his staples removed 4 May 2011.
 

 *297
 
 Defendant went to The Pantry on the morning of 12 May 2011, shortly after his wife left for work. Defendant missed Mother's Day because of his surgery, so he went to The Pantry to get his wife a gift card as well as a drink and a newspaper for himself. At the register, Defendant spoke with Lee, who he knows personally. Defendant goes to The Pantry every Thursday or Friday to cash his check. When Lee told him he could not purchase a gift card unless he paid with cash, Defendant left the store through the back door near the drink machine. Defendant drove home and remained at home for the rest of the day. On cross-examination, Defendant agreed he misled the police by telling them he did not leave his house that day. The defense rested.
 

 Lee, the owner of The Pantry, testified for the State in rebuttal. Lee remembered Defendant coming into his store on 12 May 2011. He remembers Defendant attempting to use someone else's card that day, but the transaction was denied. Lee knows Defendant, whose first name is Kelvin. The name on the card was not Kelvin, but he does not remember the name on the card.
 

 The Defendant renewed his motion to dismiss at the close of all of the evidence. The trial court granted Defendant's motion as to breaking and entering a motor vehicle, but denied the motion as to possession of stolen goods and financial card theft. The jury returned guilty verdicts for financial card theft and misdemeanor possession of stolen goods.
 

 Subsequently, the trial court dismissed the jury. The court stated:
 

 At this juncture it's a transcript of plea to fill out whether or not you are-attained a habitual felon status. I will be perfectly honest with you. You can contest that if you wanted to. You can contest it and say I am not a habitual felon. State's going to bring a clerk up or either he is going to-the DA's going to admit your prior convictions where you have been charged with an offense, convicted of an offense, charged with another offense, convicted of it, charged with another offense, and then convicted of it.
 

 We can have a hearing on that or you can just fill out a transcript of the plea acknowledging or admitting or pleading guilty to being a habitual felon and then the Court's going to sentence you. It's up to you.
 

 You want to go ahead and admit that you are a habitual felon or do you want to have a trial on that?
 

 *298
 
 Defendant's trial attorney, Biggs, accepted the plea on behalf of Defendant. Then, the following exchange occurred:
 

 The Court: Are you satisfied with your lawyer's services?
 

 Defendant: At this point right now going to prison I am not satisfied.
 

 *464
 
 The Court: Whether you are satisfied or not, do you still want to enter this plea to being habitual felon.
 

 Defendant: Yes.
 

 Defendant stipulated there was a factual basis for the plea. Judge L. Todd Burke entered judgment against Defendant on 2 April 2013, sentencing him to 76 to 104 months imprisonment. The same day, Judge V. Bradford Long entered a corrected judgment against Defendant, correcting the maximum sentence to 101 months. Defendant asked for an appellate defender, but did not file a timely written notice of appeal.
 

 II. Jurisdiction
 

 Defendant filed a
 
 pro se
 
 handwritten petition for writ of certiorari on 27 March 2015. This Court granted certiorari for the purpose of "reviewing the judgment entered on 2 April 2013 by Judge L. Todd Burke." We amend our grant of certiorari to include review of the judgment entered 2 April 2013 by Judge V. Bradford Long, a judgment entered to correct a clerical error in sentencing from the previous judgment entered by Judge L. Todd Burke.
 

 III. Standard of Review
 

 This Court reviews the denial of a motion to dismiss
 
 de novo.
 

 State v. Smith,
 

 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). Upon a defendant's motion for dismissal, the question for the trial court is "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch,
 

 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (quoting
 
 State v. Barnes,
 

 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ),
 
 cert. denied,
 

 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d. 150
 
 (2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith,
 

 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). Upon review of a motion to dismiss, we review all of the evidence, including circumstantial evidence, in the light most favorable to the State.
 
 State v. Mann,
 

 355 N.C. 294
 
 , 301,
 
 560 S.E.2d 776
 
 , 781 (2002),
 
 cert. denied,
 

 537 U.S. 1005
 
 ,
 
 123 S.Ct. 495
 
 ,
 
 154 L.Ed.2d 403
 
 (2002).
 

 *299
 
 We also review the sufficiency of an indictment
 
 de novo.
 

 State v. McKoy,
 

 196 N.C.App. 650
 
 , 652,
 
 675 S.E.2d 406
 
 , 409 (2009). Where an indictment is allegedly facially invalid, the indictment may be challenged at any time, even if it was uncontested in the trial court.
 
 State v. Wallace,
 

 351 N.C. 481
 
 , 503,
 
 528 S.E.2d 326
 
 , 341 (2000),
 
 cert. denied,
 

 531 U.S. 1018
 
 ,
 
 121 S.Ct. 581
 
 ,
 
 148 L.Ed.2d 498
 
 (2000).
 

 IV. Analysis
 

 A. Financial Card Theft
 

 A person is guilty of financial transaction card theft if he "[t]akes, obtains or withholds a financial transaction card from the person, possession, custody or control of another without the cardholder's consent and with the intent to use it[.]" N.C. Gen.Stat. § 14-113.9(a)(1) (2015). Defendant contends the evidence was insufficient to prove Defendant took or obtained Ms. McMasters' financial transaction card with the intent to use it. The surveillance video, Defendant argues, places Defendant in The Pantry at the time the card was used, but does not show him using the ATM.
 

 The theft charges here relate to a card stolen from McMasters, the card's rightful owner. The evidence presented at trial tended to show that someone stole the card from McMasters' car the morning of 12 May 2011. The same day, someone other than McMasters swiped the card at Food Lion and The Pantry. The State presented surveillance video from The Pantry showing Defendant in the store at the time the card was swiped. Lee testified Defendant attempted to use a card with another person's name on its face. Viewing the evidence in the light most favorable to the State, the State presented sufficient evidence Defendant obtained the card from McMasters without her consent and with intent to use the card. The trial court did not err by denying the Defendant's motion to dismiss and allowing the charge to proceed to the jury.
 

 *465
 

 B. Possession of Stolen Goods
 

 As with all courts, both trial and appellate, the initial duty of a judge is to determine whether the court has jurisdiction. Whether it is by motion to dismiss from one of the parties or by the court
 
 sua sponte,
 
 this initial responsibility of the court stems from the duty of the courts to provide the efficient and fair administration of justice. If the parties to a litigation are put to the expense of a trial on issues in which the court lacks the authority to determine, the time and cost of the proceedings and other scarce judicial resources are misapplied.
 

 *300
 
 In a trial or appellate court setting, the burden of establishing jurisdiction is placed upon the party seeking to invoke the trial court's jurisdiction.
 
 See
 

 Marriott v. Chatham County,
 

 187 N.C.App. 491
 
 , 494,
 
 654 S.E.2d 13
 
 , 16 (2007),
 
 appeal denied,
 

 362 N.C. 472
 
 ,
 
 666 S.E.2d 122
 
 (2008). "[I]t is [appellant's] burden to produce a record establishing the jurisdiction of the court from which appeal is taken, and his failure to do so subjects [the] appeal to dismissal."
 
 State v. Phillips,
 

 149 N.C.App. 310
 
 , 313-314,
 
 560 S.E.2d 852
 
 , 855 (2002). "When the record shows a lack of jurisdiction in the lower court, the appropriate action on the part of the appellate court is to arrest judgment or vacate any order entered without authority."
 
 State v. Felmet,
 

 302 N.C. 173
 
 , 176,
 
 273 S.E.2d 708
 
 , 711 (1981). "When the record is silent and the appellate court is unable to determine whether the court below had jurisdiction, the appeal should be dismissed."
 
 Id.
 
 at 176,
 
 273 S.E.2d at 711
 
 .
 

 A court must have subject matter jurisdiction in order to decide a case.
 
 In re T.R.P.,
 

 360 N.C. 588
 
 , 590,
 
 636 S.E.2d 787
 
 , 790 (2006). "Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act [.]"
 

 Id.
 

 (citing
 
 Hart v. Thomasville Motors, Inc.,
 

 244 N.C. 84
 
 , 90,
 
 92 S.E.2d 673
 
 , 678 (1956) ). As a result, subject matter jurisdiction may be raised at any time, whether at trial or on appeal,
 
 ex mero motu. See
 

 In re S.F.,
 

 190 N.C.App. 779
 
 , 781-782,
 
 660 S.E.2d 924
 
 , 926 (2008). "A party may not waive jurisdiction, and a court has inherent power to inquire into, and determine, whether it has jurisdiction and to dismiss an action
 
 ex mero motu
 
 when subject matter jurisdiction is lacking."
 
 Reece v. Forga,
 

 138 N.C.App. 703
 
 , 705,
 
 531 S.E.2d 881
 
 , 882 (2000).
 

 "Except in misdemeanor cases initiated in the District Court Division, no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment." N.C. Const. art. 1, § 22. An indictment must charge the "essential elements of the offense" to confer subject matter jurisdiction.
 
 State v. Snyder,
 

 343 N.C. 61
 
 , 65,
 
 468 S.E.2d 221
 
 , 224 (1996) (citation omitted). "[T]he evidence in a criminal case must correspond with the allegations of the indictment which are essential and material to charge the offense."
 
 State v. Walston,
 

 140 N.C.App. 327
 
 , 334,
 
 536 S.E.2d 630
 
 , 635 (2000). The purpose of an indictment is to give defendant reasonable notice of the charges against him so that he may prepare for his upcoming trial.
 
 State v. Campbell,
 

 368 N.C. 83
 
 , ----,
 
 772 S.E.2d 440
 
 , 443 (2015) (citing
 
 State v. Sturdivant,
 

 304 N.C. 293
 
 , 308,
 
 283 S.E.2d 719
 
 , 729 (1981) ). "North Carolina law has long provided that there can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation."
 
 State v. Marshall,
 

 188 N.C.App. 744
 
 , 748,
 
 656 S.E.2d 709
 
 , 712 (2008) (citation and internal quotation marks omitted).
 

 *301
 
 Knowing possession of stolen property valued at not more than $1000 is a misdemeanor. N.C. Gen.Stat. § 14-71.1, 14-72(a) (2015). The elements of possession of stolen goods are: "(1) possession of personal property; (2) which has been stolen, (3) the possessor knowing or having reasonable grounds to believe the property to have been stolen; and (4) the possessor acting with a dishonest purpose."
 
 State v. Tanner,
 

 364 N.C. 229
 
 , 232,
 
 695 S.E.2d 97
 
 , 100 (2010) (quoting
 
 State v. Perry,
 

 305 N.C. 225
 
 , 233,
 
 287 S.E.2d 810
 
 , 815 (1982) ).
 

 Here, the indictment states: "[T]he defendant named above unlawfully, willfully and feloniously did possess one handbag containing personal items, one wallet, one Wachovia debit/credit card, one social security
 
 *466
 
 card, one check book, and $30.00 in United States currency." The indictment does not allege the essential elements that the listed personal property was stolen or that Defendant knew or had reason to know the property was stolen, creating a facial defect in the indictment. Accordingly, Defendant's conviction for possession of stolen goods must be vacated.
 

 C. Ineffective Assistance of Counsel
 

 Lastly, Defendant contends the final judgment should be vacated because he received ineffective assistance of counsel. Generally, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not directly on appeal.
 
 State v. Stroud,
 

 147 N.C.App. 549
 
 , 553,
 
 557 S.E.2d 544
 
 , 547 (2001) (citations omitted). "Our Supreme Court has instructed that should the reviewing court determine the [ineffective assistance of counsel] claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's rights to reassert them during a subsequent MAR proceeding."
 

 Id.
 

 at 554
 
 ,
 
 557 S.E.2d at 547
 
 (internal quotation marks and citation omitted). Therefore, we dismiss this claim without prejudice to the right of Defendant to file a motion for appropriate relief with the trial court.
 

 V. Conclusion
 

 For the foregoing reasons, we find no error in part, vacate in part, and dismiss in part without prejudice.
 

 NO ERROR IN PART; VACATE IN PART; DISMISS IN PART.
 

 Judges ELMORE and DAVIS concur.