An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-458

Filed 17 December 2025

McDowell County, No. 21CR050320-580

STATE OF NORTH CAROLINA

v.

BRANDON KYLE MCNEIL

Appeal by Defendant from judgments entered 7 September 2022 by Judge Bradley B. Letts in McDowell County Superior Court. Heard in the Court of Appeals 30 October 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Alexis C. Pugh, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Heidi Reiner, for the Defendant.*

WOOD, Judge.

Brandon Kyle McNeil ("Defendant") appeals from judgments following a jury's verdict finding him guilty of larceny of a motor vehicle, possession of stolen property, and disassembly of a motor vehicle illegally obtained by theft. On appeal, Defendant contends the trial court erred by: (1) allowing irrelevant and highly prejudicial

character evidence testimony from a law enforcement witness; and (2) allowing hearsay testimony. Additionally, Defendant contends he was deprived of his right to effective assistance of counsel due to attorney errors. After careful review of the record, we conclude Defendant received a fair trial free from prejudicial error.

## I. Factual and Procedural Background

Brian Carter ("Carter") owned a 1983 Chevrolet C10 pickup truck that was not currently road legal, but he used it for short distances on his job site. He last saw the truck at his work site at 46 Marys Lane on or about 24 December 2020, prior to the Christmas holiday. When he returned to the site on or about 28 December 2020, the truck was missing. Carter notified law enforcement officers of the loss and posted pictures of the missing truck to Facebook on social media. Carter then passed information he received from Facebook responses to law enforcement officers.

McDowell County Sheriff's Detective Burlin Ballew ("Detective Ballew") received both the original report and the information from Facebook. Detective Ballew conducted an investigation including an interview with Defendant. On 17 May 2021, Defendant was indicted for larceny of a motor vehicle, possession of stolen goods, and chop shop activity by theft.

On 5 September 2022, the matter came on for trial in McDowell County Superior Court. Carter testified to the description of the truck and its location prior to the theft. Specifically, he testified the investigation yielded numerous pictures of the work site. The photographs tended to show that the truck was located on the job

site on Saturday, December 26th but gone on Sunday, December 27th. He also testified that the truck's engine was very loud so it was likely anyone nearby would have heard the engine if it was turned over. Further, Carter testified the truck parts recovered by Detective Ballew belonged to his truck and could be identified based on the distinctive aftermarket interior, the size of the tires, and the vehicle identification number ("VIN") which matched the VIN listed on his title for the truck.

Detective Ballew testified concerning his investigation. Detective Ballew testified Carter provided him with information from the responses to his Facebook post, including that someone had seen the truck at Smith's garage. Detective Ballew testified he was familiar with Smith's garage because he had "been many times for similar types of things." When Detective Ballew arrived at Smith's on 7 January 2021 the owner, Smith, was out front. Smith asked him what he was looking for, and Detective Ballew described the truck. Smith told him there was one there and asked if it had been stolen. Detective Ballew told him it was possible and requested permission to look. Smith granted permission, signed a consent form, and told Detective Ballew that he did not want it there if it had been stolen.

Detective Ballew located parts to the truck and its VIN plate which had been removed but placed on the front seat of the vehicle. He confirmed with Carter that it matched the VIN on his truck title. During his testimony Detective Ballew identified multiple pictures of truck parts noting someone had attempted to paint the parts white.

Detective Ballew further testified Smith provided the names of other individuals who may have had knowledge of the truck. The trial court sustained Defendant's objection to Detective Ballew reading the names of those individuals into evidence. However, he testified that based on his conversation with Smith, he obtained a search warrant for Mitchell Roper's ("Roper") property including his home and outbuildings and wanted to have conversations with Dylan Smith and Defendant.

In his testimony concerning Roper, Detective Ballew stated that Roper was "an individual that we have dealt with numerous times over the years. A lot of times, it was for narcotic-type crimes. Typically, with narcotics, you end up with a lot of stolen goods that go along with that." Detective Ballew stated he executed the search warrant on 8 January 2021. The prosecutor asked Detective Ballew, "what was your understanding about how the other parts got to Mr. Roper's garage?" Defense counsel objected but the trial court overruled the objection. Detective Ballew stated "they were brought there on a trailer. There was a utility trailer there. It was being pulled by [Defendant's] father's blue truck." Detective Ballew identified numerous pictures of the various truck parts found on the trailer and in Roper's garage.

Detective Ballew then explained that he interviewed Smith's son, Alexander Kane ("Kane"), who was in jail at the time. Detective Ballew testified that Kane was present at Smith's garage when the truck arrived. The State asked about his conversation with Kane, but Defendant's objection to the hearsay was sustained.

Detective Ballew testified that after talking to Kane he then wanted to talk to Lloyd Woodard ("Woodard") and Defendant.

Detective Ballew finally testified concerning his interview with Defendant. He noted he was unsuccessful in locating Defendant until 16 March 2021 when he found out Defendant was in jail. Prior to the interview, Defendant signed a form waiving his Miranda rights. Detective Ballew testified Defendant initially denied stealing the truck and insisted it was already at Smith's garage and that he helped Smith and Kane take it apart to sell parts for Roper. Detective Ballew testified he told Defendant three individuals had reported that he and another guy had stolen the truck. Ultimately, Detective Ballew testified that Defendant admitted that he, Woodard, and Kane were all present when they found the truck. Defendant described its location and stated Woodard looked inside and saw the keys. Kane drove the truck, and Defendant and Woodard followed. The truck eventually stopped and was towed the rest of the way to Smith's garage. Five men, including Defendant, were charged with various crimes related to the theft of the vehicle.

Defendant chose not to testify at trial. The trial court informed him of his right to testify and gave him extra time to consult with his attorney. Defendant did not object during the charge conference or after the jury instructions. The jury deliberated for twenty-six minutes then returned verdicts of guilty on all counts.

## II. Analysis

Defendant raises two issues on appeal, the trial court erred by: (1) allowing

irrelevant and highly prejudicial character evidence testimony from a law enforcement witness; and (2) allowing hearsay testimony. Additionally, Defendant contends he was deprived of his right to effective assistance of counsel due to his attorney's errors.

## A. Jurisdiction

The trial court entered judgment on 7 September 2022. On 30 May 2024 Defendant filed a Petition for Writ of *Certiorari*. On 17 June 2024, a panel of this Court unanimously granted the writ of *certiorari* allowing review of the judgments entered 7 September 2022. We now review the case before us.

## B. Plain Error Analysis

Defendant contends the trial court erred in allowing portions of Detective Ballew's testimony outlining his investigation into the theft. However, Defendant concedes there were no objections to those portions of testimony at trial and the alleged error is therefore unpreserved. "Unpreserved error in criminal cases . . . is reviewed only for plain error." *State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012). Our Supreme Court has laid out a three-prong test for plain error:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a "probable impact" on the outcome, meaning that "absent the error, the jury probably would have returned a different verdict." Finally, the defendant must show that the error is an "exceptional case" that warrants plain error review, typically by showing that the error seriously affects "the fairness, integrity or public reputation of judicial proceedings."

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (cleaned up). Therefore, Defendant has the high burden of demonstrating prejudice – that but for the error the jury would have probably had a different outcome on any one of Defendant's charges – in order to reach the plain error threshold. *Id.*

Defendant alleged the trial court erred by admitting both impermissible character evidence and hearsay testimony. Defendant contends Detective Ballew's statements that: (1) Defendant was located and interviewed in jail; (2) Detective Ballew was familiar with Smith's garage and Smith always cooperates; (3) Detective Ballew had dealt with Mitchell Roper numerous times for narcotic crimes which are often connected to stolen goods; and, (4) Kane Smith was in jail when Detective Ballew spoke to him constitutes impermissible character evidence. Additionally, the alleged hearsay statements included testimony from Detective Ballew that: (1) an unidentified Facebook source said the truck was at Smith's garage; (2) Detective Ballew was told the truck had been disassembled to trade parts for narcotics; (3) Smith told Detective Ballew about how the truck arrived at the garage and who may be involved; (4) Detective Ballew was told the parts at Roper's garage were brought on a trailer pulled by Defendant's father's blue truck; and, (5) Detective Ballew's statement to Defendant that three people had told him Defendant was part of the group that "had stolen the truck and brough it to Smith's garage."

Defendant alleges but for the impermissible testimony there would not have

been sufficient evidence from which the jury could have convicted him. Defendant contends the likelihood that he would have been acquitted demonstrates prejudicial error. We disagree.

Defendant was charged with felony larceny of a motor vehicle pursuant to N.C. Gen. Stat. § 14-72(a), possession of stolen goods pursuant to N.C. Gen. Stat. § 14-71.1, and chop shop activity by theft pursuant to N.C. Gen. Stat. § 14-72.7. "The elements of common law larceny are that the defendant: (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently." *State v. Sisk*, 285 N.C. App. 637, 641, 878 S.E.2d 183, 186 (2022) (cleaned up). "[T]he statutory provision [elevating] misdemeanor larceny to felony larceny does not change the nature of the crime; elements of proof remain the same." *State v. Hsiung*, 291 N.C. App. 104, 114–15, 895 S.E.2d 411, 417 (2023), *rev. dismissed*, ___ N.C. ___, 900 S.E.2d 670 (2024) (internal quotations and citations omitted). The only additional element for conviction of felony larceny pursuant to N.C. Gen. Stat. § 14-72(a) is that the value of goods at issue exceeds $1,000.00. *Id.* The elements of possession of stolen goods pursuant to N.C. Gen. Stat. § 14-71.1 are: "(1) possession of personal property; (2) which has been stolen, (3) the possessor knowing or having reasonable grounds to believe the property to have been stolen; and (4) the possessor acting with a dishonest purpose." *State v. Sellers*, 248 N.C. App. 293, 301, 789 S.E.2d 459, 465 (2016) (quoting *State v. Tanner*, 364 N.C. 229, 232, 695 S.E.2d 97, 100 (2010)). Finally, a person is guilty of

chop shop activity if, in pertinent part, they engage in "[a]ltering, destroying, disassembling, dismantling, reassembling, or storing any motor vehicle or motor vehicle part the person knows or has reasonable grounds to believe has been illegally obtained by theft, fraud, or other illegal means." N.C. Gen. Stat. § 14-72.7.

Presuming, *arguendo* that all of the contested testimony should not have been admitted, clear evidence of each element was presented from which the jury was likely to convict Defendant on all three charges. Carter testified that the truck was worth approximately $10,000.00, that he had not given anyone permission to drive the truck, and that he had not provided consent for anyone to take the truck permanently. He unequivocally testified that the truck belonged to him, and he possessed the title to which Detective Ballew had matched the VIN number.

Detective Ballew testified to the details of Defendant's confession, given after he signed a *Miranda* waiver. Defendant told Detective Ballew that while they were driving, he needed to urinate so he, Woodard, and Kane left the main road and drove up the cul-de-sac where they found the truck. Woodard checked the truck, found the keys, and they all then decided to steal it. Kane drove the truck part of the way before they towed it the remainder of the distance to the garage with Defendant's dad's truck. He admitted to helping pull the engine and transmission out of the truck and pulling the trailer containing parts of the vehicle to Roper's garage. He also acknowledged that, among other payments, they planned to trade truck parts for a moped. Defendant did not object to the testimony concerning his confession at trial

and does not raise the issue on appeal.

Carter's testimony paired with Detective Ballew's testimony concerning Defendant's confession constitutes substantial evidence of each element of the crimes from which the jury was more likely than not to convict Defendant on all charges. Because Defendant has failed to show the necessary prejudice, that but for the error the jury would have probably returned a different verdict on any one of his charges, he has failed to meet the high bar of plain error. Thus, we hold the trial court did not prejudicially err.

**D. Ineffective Assistance of Counsel**

Finally, Defendant contends he was deprived of his right to effective assistance of counsel because his attorney: (1) failed to object to the character evidence and hearsay testimony during trial; and (2) failed to inform Defendant of his appeal rights prior to ending his representation.

We review whether a defendant received ineffective assistance of counsel under a *de novo* standard. *State v. Wilson*, 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014).

> Generally, a claim of ineffective assistance of counsel should be considered through a motion for appropriate relief before the trial court in post-conviction proceedings and not on direct appeal. When this Court reviews this type of claim on direct appeal, the claim will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.

*State v. Reber*, 296 N.C. App. 114, 118, 908 S.E.2d 410, 415 (2024) (cleaned up). Two prongs must be met for a successful ineffective assistance of counsel claim. First, the defendant must show counsel's representation was deficient. Second, the defendant must show the deficient performance prejudiced his case. "In order to establish prejudice, [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Moses*, 205 N.C. App. 629, 636, 698 S.E.2d 688, 694 (2010) (internal quotations and citations omitted).

When considering the reasonable probability standard this Court has determined it to be a probability that is "sufficient to undermine confidence in the outcome. Under the reasonable probability standard, a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case. However, the defendant does need to demonstrate that at least one juror would have struck a different balance." *State v. Lane*, 271 N.C. App. 307, 313–14, 844 S.E.2d 32, 39 (2020) (cleaned up).

In the case s*ub judice,* the jury was presented with evidence Carter's truck, worth at least $10,000.00, was taken without his permission and disassembled. Defendant admitted to stealing, transporting, and disassembling the truck in collaboration with associates in order to sell or trade the parts. Under these facts, regardless of whether trial counsel failed to object to character evidence or hearsay

testimony, it did not "undermine confidence" in the result or create a reasonable probability of a different result. Thus, Defendant's IAC claim is without merit.

Furthermore, as we have considered the merits of Defendant's appeal, any ineffective assistance of counsel claims related to his right to appeal have been rendered moot.

## III.    Conclusion

For the foregoing reasons, we conclude the trial court did not commit prejudicial error by admitting hearsay or irrelevant and prejudicial character evidence through law enforcement testimony. Further, any possible error by Defendant's attorney did not prejudicially impact the outcome of the trial. We hold Defendant received a fair trial free from prejudicial error.

NO PREJUDICIAL ERROR.

Judges TYSON and FREEMAN concur.

Report per Rule 30(e).